2010 UT 35

**STATE of Utah, Plaintiff and Appellee,**

v.

**Eryk DREJ, Defendant and Appellant.**

No. 20080003.

Supreme Court of Utah.

May 14, 2010.

478

tion to disprove special mitigation beyond a reasonable doubt.

Mark L. Shurtleff, Att'y Gen., Christine F. Soltis, Asst. Att'y Gen., for plaintiff.

Thomas H. Means, Margaret P. Lindsay, Douglas J. Thompson, Provo, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 In response to a divided opinion by this court in which we questioned but ultimately upheld the constitutionality of the state's limited insanity defense,[1] the Utah Legislature enacted a new method of mitigating criminal culpability based on a defendant's mental illness called "special mitigation." In a narrow set of circumstances, special mitigation allows mentally-ill defendants who acted under the influence of a delusion, to reduce their criminal convictions by one degree. Unlike a traditional insanity defense, special mitigation cannot be used to eliminate criminal liability entirely. In the decade since the Legislature's adoption of special mitigation, the defendant in this case, Eryk Drej, appears to be the first to address special mitigation; he has challenged the constitutionality of the special mitigation statute. He argues the statute is unconstitutional because it places the burden of proving special mitigation on the defendant, in violation of the due process clauses of the state and federal constitutions. He also argues the statute was enacted contrary to the state's separation of powers provision and that it violated equal protection under both the state and federal constitutions.

¶ 2 Mr. Drej urges this court to hold the statute unconstitutional but at the same time to preserve special mitigation as an affirmative defense available to mentally-ill defendants. He argues that we ought to preserve special mitigation by severing the unconstitutional language concerning the burden of proof from the statute. What would be left, under Mr. Drej's theory of severability, is a statute that permits a defendant to raise special mitigation but requires the prosecu-

## BACKGROUND

¶ 3 Since this case reaches us on an interlocutory appeal, the facts of Mr. Drej's alleged crime have yet to be adjudicated. Mr. Drej is charged with the murder of his brother, Lucasz Drej. Mr. Drej allegedly shot his brother twenty-two times while Lucasz sat in his truck talking on a cell phone. After emptying his weapon, Mr. Drej allegedly pulled Lucasz from his vehicle and attempted to smash his skull with the butt of a rifle. After two strikes with the weapon, Mr. Drej threw his brother's body down an outside stairwell of the family home. In the days that followed the killing, Utah County prosecutors filed a single murder charge against Mr. Drej. In addition to the single charge, prosecutors filed a notice that they intended to seek an enhanced sentence based on Mr. Drej's use of a dangerous weapon during the commission of a felony.

¶ 4 Within a month of the filing of the murder charge, Mr. Drej's defense attorney called into question Mr. Drej's mental health and competency to stand trial. Mr. Drej's confessed reason for the killing, coupled with his bizarre conduct while in jail, gave rise to the defense's inquiry into Mr. Drej's competency. Mr. Drej reportedly told police that Lucasz was "pimping" girls and then having them killed to sell their "organs on the black market." Lucasz, according to Mr. Drej's confession, was the primary organizer of the prostitution ring and associated killings and organ sales. The following facts formed the basis for Mr. Drej's beliefs: Lucasz had two cell phones, which he didn't always answer; Mr. Drej observed women enter a nearby apartment but didn't see them leave; and Mr. Drej had a "vision" that Lucasz intended to harm him. Mr. Drej had also placed a number of drawings throughout the family home that he believed would protect family members. One picture was designed to be a warning to Lucasz. Mr. Drej also engaged in extremely bizarre conduct while held in the Utah County Jail.

---

1. *State v. Herrera,* 895 P.2d 359 (Utah 1995).

¶ 5 The Fourth District Court found Mr. Drej incompetent to stand trial. After five months at the Utah State Hospital, the district court determined Mr. Drej had regained his competency and was eligible to stand trial. As the parties prepared for trial, Mr. Drej announced he intended to assert three alternative defenses: (1) not guilty by reason of insanity; (2) diminished mental capacity; and (3) special mitigation.

¶ 6 As the district court considered jury instructions for the upcoming trial, Mr. Drej called into question the constitutionality of the special mitigation statute. He argued that the federal and state constitutions and the Utah Code required a jury instruction that placed the burden of disproving special mitigation beyond a reasonable doubt on the prosecution. Mr. Drej based his argument primarily on a legal theory that equated special mitigation to an affirmative defense. Under this theory, Mr. Drej argued that the federal and state constitutions and the Utah Code mandated that the prosecution disprove the defense. The state responded by arguing that the legislature intentionally placed the burden of proving special mitigation on the defendant and that it was constitutional to do so. The district court held that special mitigation is not equivalent to an affirmative defense, drawing a distinction between defenses that exculpate and those that merely reduce the severity of punishment on the basis of reduced moral culpability.

¶ 7 Mr. Drej filed a petition for interlocutory appeal with this court, which we granted. He challenges the constitutionality of the state's special mitigation statute under the Utah and United States Constitutions. As he did in the district court, Mr. Drej urges us to strike the purported unconstitutional portions of the statute, leaving special mitigation in place but with the burden of disproving the defense on the prosecution.

¶ 8 We have jurisdiction over this matter pursuant to Utah Code section 78A–3–102(3)(h) (2008).

## STANDARD OF REVIEW

¶ 9 " 'The issue of whether a statute is constitutional is a question of law, which we review for correctness, giving no deference to the trial court.' " *State v. Ross*, 2007 UT 89, ¶ 17, 174 P.3d 628 (quoting *Wood v. Univ. of Utah Med. Ctr.*, 2002 UT 134, ¶ 7, 67 P.3d 436). "Furthermore, we presume the legislation being challenged is constitutional, and we resolve any reasonable doubts in favor of constitutionality." *Wood*, 2002 UT 134, ¶ 7, 67 P.3d 436.

## ANALYSIS

¶ 10 Mr. Drej attacks the constitutionality of Utah's special mitigation statute on three grounds. First, Mr. Drej argues the statute violates the due process clauses of the Fourteenth Amendment to the United States Constitution and art. I, section 7 of the Utah Constitution. Mr. Drej's due process claim is based on a premise that special mitigation is the legal equivalent of an affirmative defense, which must require the state to disprove the claim for special mitigation beyond a reasonable doubt. Second, Mr. Drej claims the statute violates the separation of powers clause of the Utah Constitution because it constitutes a rule of procedure and was not adopted by a super-majority vote of the Utah Legislature. Finally, Mr. Drej alleges the statute violates the equal protection provisions of the federal and state constitutions. This argument is based on a theory that the special mitigation provision imposes upon mentally-ill defendants a more burdensome procedure to make out special mitigation than that which is imposed upon non-mentally-ill defendants who assert other affirmative defenses.

¶ 11 Mr. Drej's theories all stem from the allocation of the burden of proof in the special mitigation statute. The statute requires:

> If the trier of fact finds the elements of an offense as listed in Subsection (5)(b) are proven beyond a reasonable doubt, and also that the existence of special mitigation under this section *is established by a preponderance of the evidence,* it shall return a verdict on the reduced charge as provided in Subsection 5(b).

Utah Code Ann. § 76–5–205.5(5)(a) (Supp. 2009) (emphasis added). Mr. Drej claims that assigning the burden of proof to the

defendant is unconstitutional. We treat his arguments in the order previously noted.

## I. DUE PROCESS

¶ 12 In urging this court to invalidate the special mitigation statute, Mr. Drej argues the statute is unconstitutional under the due process provisions of the Utah and U.S. Constitutions. In so doing, Mr. Drej presents two distinct arguments: first, that special mitigation is an affirmative defense, which must be disproved by the state; and alternatively, that special mitigation violates due process because the statute is a means of finding a defendant guilty of manslaughter, which the state, not the defendant, must have the burden of proving. We are persuaded by neither argument and conclude that special mitigation does not violate federal or state law.

### A. Mr. Drej's Affirmative Defense Theory

¶ 13 In arguing against the constitutionality of special mitigation, Mr. Drej claims that special mitigation is an affirmative defense and, as such, requires the state to shoulder the associated burden of proof. Mr. Drej's argument is predicated, in part, on a theory that the due process clauses of the Utah and U.S. Constitutions require the state to disprove *all* affirmative defenses. Because there appears to be some confusion on the interplay between federal and state law on this issue, we briefly discuss the burdens associated with the affirmative defenses under federal and state law before turning our attention to determine if special mitigation is an affirmative defense that must be disproved by the state.

¶ 14 Under federal law, Mr. Drej's argument that the state must disprove all affirmative defenses is clearly wrong. The U.S. Supreme Court has interpreted the federal due process clause to permit the state to

shift the burden of proof to a defendant on affirmative defenses that do not act to negate an element of the charged offense.[2] *Patterson v. New York*, 432 U.S. 197, 206–07, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (stating that an affirmative defense that "does not serve to [negate] any facts of the crime which the State is to prove in order to convict" is a "separate issue" that does not come within the due process protections of the federal constitution); *see also United States v. Matthews*, 545 F.3d 223, 227 (2d Cir.2008) ("Where no fundamental right is at issue, there is no doubt that the legislature may assign to defendants burdens of proof with regard to affirmative defenses."); *United States v. Contreras*, 536 F.3d 1167, 1173 (10th Cir.2008) (stating it is "constitutionally permissible for a legislature to assign the burden of proof for an affirmative defense to the defendant"). The *Patterson* rule is derived largely from the basic constitutional principle that the state must prove "every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

¶ 15 Under the federal constitution, the legislature may assign the burden of proof for an affirmative defense to a defendant so long as the defense does not negate an element of the offense. Put another way, the state must shoulder the burden of proof on all affirmative defenses that act to negate an element of the charged offense. While the federal rule is unambiguous, it is equally evident that Utah has developed a common law and statutory rule independent of, and more protective than, that articulated in federal jurisprudence arising from the due process clauses of the U.S. Constitution. The Utah rule requires that the prosecution "disprove the existence of affirmative defenses beyond a reasonable doubt once the defendant has produced some evidence of the de-

---

**2.** In making his due process argument, Mr. Drej cites to the U.S. Supreme Court's decision in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), for the proposition that the state must disprove all affirmative defenses. *Mullaney* was initially interpreted to stand for this broad proposition. *See, e.g., Smart v. Leeke*, 873 F.2d 1558, 1562 (4th Cir.1989) (discussing attempts to interpret *Mullaney* ). But two years

after the publication of *Mullaney*, the Supreme Court expressly rejected this interpretation and declined to adopt the theory that "a [s]tate must disprove beyond a reasonable doubt every fact constituting *any and all* affirmative defenses." *Patterson v. New York*, 432 U.S. 197, 210, 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (emphasis added).

fense." *State v. Wood,* 648 P.2d 71, 82 n. 7 (Utah 1982); *see also State v. Low,* 2008 UT 58, ¶ 45, 192 P.3d 867 (stating the prosecution, not the defendant, carries the burden of proving "the absence of an affirmative defense once the defense is put into issue" (internal quotation marks omitted)); *State v. Swenson,* 838 P.2d 1136, 1138 (Utah 1992) (noting "a long line of Utah cases [that] imposes on the prosecution the burden to disprove the existence of affirmative defenses beyond a reasonable doubt, once the defendant has produced some evidence of the defense"); *State v. Vacos,* 40 Utah 169, 120 P. 497, 502 (1911) ("[T]he duty or burden is cast upon the defendant to produce or bring forward the evidence in support of justification or excuse, but he is not required to establish the justification or excuse by a preponderance of the evidence before he is entitled to avail himself of that defense. All that he is required to do is to produce sufficient evidence of justification or excuse...."). Additionally, the legislature has codified this rule. Utah Code Ann. § 76–1–502 (2008) (requiring the state to negate a defense "[b]y proof" when "[t]he defense is an affirmative defense, and the defendant has presented evidence of such affirmative defense"); *see also id.* § 76–1–504 (mandating that the defendant present evidence of an affirmative defense but not requiring the defendant to prove the defense).

¶ 16 Mr. Drej suggests that the Utah rule is a fundamental protection found within art. I, section 7 of the Utah Constitution or, alternatively, found within the protections of the federal constitution. The Utah rule is plainly not derived from federal law as it exceeds the scope of Supreme Court precedent. Nor have we ever determined that our rule is mandated by the state constitution. Although Mr. Drej requests that we do so now, we are not required to reach that question to resolve this case, and we decline to do so. It is sufficient for this appeal to acknowledge that the rule in Utah, originally founded in the common law and now codified by the legislature, demands that the state disprove all affirmative defenses that have been properly raised by a criminal defendant.

¶ 17 Having clarified the law surrounding the burden of proof on affirmative defenses under state and federal law, we now turn to analyze the propriety of the legislature's decision to place the burden of proving special mitigation on the criminal defendant. To do so we must determine if special mitigation is in fact an affirmative defense under Utah law that must be disproved by the prosecution once appropriately raised by a defendant.

¶ 18 The legislature unquestionably has the exclusive authority to define what acts constitute crimes and what the elements of those crimes are. *See* Utah Code Ann. § 76–1–105 (2008) (abolishing all common law crimes and establishing Utah's criminal law as statutorily based); *State v. Miller,* 2008 UT 61, ¶ 16, 193 P.3d 92 ("Utah's criminal law is statutory."); *see also State v. Gallion,* 572 P.2d 683, 688 (Utah 1977) ("[T]he courts may not denounce and punish as crimes acts and omissions not made punishable by statute, for it is a *legislative power to declare acts as crimes* and to prescribe proper penalties." (emphasis added)); *State v. Johnson,* 44 Utah 18, 137 P. 632, 634 (1913) ("[W]e cannot, in the absence of legislative enactment making such acts criminal and punishable, denounce and punish them as crimes."); 21 Am.Jur.2d *Criminal Law* § 3 (2008) (stating where states have abolished common law crimes, "no act that is merely immoral or reprehensible can be treated as a crime unless made so by statute"). Moreover, it is for the legislature to define affirmative defenses to crimes under the Utah Code. *See Miller,* 2008 UT 61, ¶ 16, 193 P.3d 92 (demanding that affirmative defenses arise from the Utah Code and relate to the crime the defendant is charged under); *State v. Gardiner,* 814 P.2d 568, 574 (Utah 1991) (finding the legislature's decision against codifying the "common law right to resist an illegal search or arrest" "impliedly preclude[d]" the court from recognizing such a defense). We have noted that the courts of this state "are bound by the legislature's decision to categorize" and define affirmative defenses. *Low,* 2008 UT 58, ¶ 24, 192 P.3d 867. Indeed, in *Low* we found that we were bound to recognize extreme emotional distress manslaughter and imperfect self-defense manslaughter as affirmative

defenses after the legislature converted them from lesser included offenses. *Id.*

¶ 19 The legislature has wide latitude to recognize and define the affirmative defenses applicable under the Utah Code. As a general matter, we rely on that legislative categorization. The plain language of section 76–5–205.5 leaves no doubt that the legislature did not intend to enact special mitigation as an affirmative defense. The legislature labeled section 76–5–205.5 as special mitigation, used that term throughout the statute, and never used the term "affirmative defense," or even "defense." Additionally, special mitigation is found in its own statutory section rather than included with the affirmative defenses to murder found in section 76–5–203.

¶ 20 Mr. Drej, however, urges us to apply a functional analysis by arguing that while the legislature did not categorize special mitigation as an affirmative defense, it is an operational equivalent to an affirmative defense. The legislature cannot avoid constitutional requirements merely by adopting language that belies a statute's actual function. *See State v. Palmer,* 2009 UT 55, ¶ 12, 220 P.3d 1198 (stating the labeling of elements as "sentencing factors" does not relieve the state of its burden to prove those elements beyond a reasonable doubt) (internal quotation marks omitted); *see also Ring v. Arizona,* 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ("The dispositive question ... 'is one not of form, but of effect.'" (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 494, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000))). While we might be required to engage in a functional analysis when faced with a claim that proof of an element of the primary offense was at issue, we do not have such a claim in this case. The elements of special mitigation do not contravene or rebut any of the statutory elements of murder. As was the case in *Low,* therefore, we rely on the legislature's categorization and the plain language of the statute itself to conclude that special mitigation is not an affirmative defense. The legislature acted within its authority in placing the burden of proof on the defendant to prove special mitigation.

¶ 21 In enacting section 76–5–205.5, the legislature opted to permit a narrow class of mentally-ill defendants to argue for special mitigation in aggravated murder and murder cases. In exchange for giving defendants the ability to argue for special mitigation, the legislature elected to require the defendant to prove special mitigation by a preponderance of the evidence. As special mitigation is not a defense to the underlying primary charge of murder, it cannot run afoul of the federal constitution or state law.

### B. Mr. Drej's Lesser Included Theory

¶ 22 In the alternative to his claim that special mitigation is an affirmative defense, Mr. Drej argues that special mitigation is a lesser included offense of murder; namely a means of establishing manslaughter. It is true that, if special mitigation constituted the substantive crime of manslaughter, the state could be required to prove each element of that crime by proof beyond a reasonable doubt. *In re Winship,* 397 U.S. at 364, 90 S.Ct. 1068; Utah Code Ann. § 76–1–501. In making his argument, Mr. Drej directs us to our split decision in *State v. Herrera,* 895 P.2d 359 (Utah 1995), for the theory that due process does not allow the state to place the burden of proof upon the defendant but that special mitigation does exactly this. This is a reframing of Mr. Drej's affirmative defense argument discussed above.

¶ 23 Utah law is unambiguous when it comes to establishing criminal offenses. "Legislatures are free to 'declare what constitutes an offense against society and to define the elements that constitute such an offense.'" *State v. Martinez,* 2002 UT 80, ¶ 16, 52 P.3d 1276 (quoting *United States v. Ransom,* 942 F.2d 775, 776 (10th Cir.1991)); *see also State v. Jeffries,* 2009 UT 57, ¶ 13 n. 3, 217 P.3d 265 ("The job of the legislature is to define crimes, prescribe penalties, and establish guidelines for prosecutors, judges, and juries for enforcing the law."); *Palmer,* 2009 UT 55, ¶ 13, 220 P.3d 1198 ("[I]t is the role of the legislature to 'choose the elements that define their crimes.'" (quoting *Jones v. United States,* 526 U.S. 227, 241, 119 S.Ct.

1215, 143 L.Ed.2d 311 (1999))); *Low*, 2008 UT 58, ¶ 57, 192 P.3d 867 (holding that prosecutors are barred from charging imperfect self-defense manslaughter or extreme emotional distress manslaughter after the legislature converted the substantive crimes into affirmative defenses). The legislature has not defined the conduct included in the special mitigation statute as an offense. There is no such thing as "special mitigation manslaughter" in the Utah Code.

¶ 24 As special mitigation is not a substantive offense, the requirement that the state must prove all elements of an offense is not implicated. In sum, special mitigation does not offend due process under either the Utah Constitution or its federal counterpart because special mitigation is neither an affirmative defense nor a substantive offense that the defendant may be charged with. The district court correctly rejected Mr. Drej's due process argument.

## II. SEPARATION OF POWERS

¶ 25 Article V, section 1 of the Utah Constitution describes the three branches of Utah government and states that "no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted." The latter phrase of this clause establishes that there may be exceptions to the separation-of-powers doctrine, but any exception must be found within the Utah Constitution. Utah Const. art. V, § 1. Art. VIII, section 4 (containing this court's rule making authority) includes one such exception. This provision vests the Utah Supreme Court with the authority to "adopt rules of procedure and evidence to be used in the courts of the state."

Utah Const. art. VIII, § 4. The legislature is permitted to "amend the Rules of Procedure and Evidence adopted by the Supreme Court upon a vote of two-thirds of all members of both houses." *Id.* (amendment added in 1984). Mr. Drej argues that the special mitigation statute is a rule of procedure and that it was not enacted by two-thirds of the House of Representatives.[3]

■■ ¶ 26 The resolution of the separation-of-powers argument depends on whether special mitigation is a rule of procedure or creates a substantive right. Generally, the legislature has the authority to enact substantive laws governing conduct within the state. *See Ryan v. Gold Cross Servs., Inc.*, 903 P.2d 423, 425 (Utah 1995). The Supreme Court, in contrast, has the "prerogative ... to adopt rules for practice and procedure in all courts." *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 539 (Utah 1983) (internal quotation marks omitted).[4] Substantive law "creates, defines and regulates the rights and duties of the parties ... which may give rise to a cause for action." *Petty v. Clark*, 113 Utah 205, 192 P.2d 589, 593 (1948). Procedural law, which is often labeled adjective law, "prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective." *Id.* at 593–94 (holding that a statute that alters the unanimity requirement for jury trials is procedural).

■ ¶ 27 Statutes are "purely procedural only where they provide a 'different mode or form of procedure for enforcing substantive rights.'" *Brown & Root Indus. Serv. v. Indus. Comm'n of Utah*, 947 P.2d 671, 675 (Utah 1997) (quoting *Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 667

3. The Utah House of Representatives fell three votes short of approving the statute with a two-thirds majority vote. Utah House Journal, 53rd Utah Leg., Gen. Sess., at 306–07 (February 4, 1999) (voting 47 in favor, 21 opposed, and 7 absent while needing 50 affirmative votes to reach two-thirds). There is no similar problem with the vote in the Senate. Utah Senate Journal, 53rd Utah Leg., Gen. Sess., 169 (January 26, 1999) (documenting that 26 of the 29 senators voted to approve special mitigation).

4. In *Brickyard Homeowners' Ass'n Management Committee v. Gibbons Realty Company*, we described this court's authority over rules of procedure as "exclusive." 668 P.2d 535, 539 (Utah 1983). At the time, this court had exclusive oversight of the rules of procedure governing the courts of Utah. An amendment in 1984 to art. VIII, section 4 of the Utah Constitution eliminated the exclusivity of the court's control over rules of procedure and evidence. *See Ryan v. Gold Cross Servs.*, 903 P.2d 423, 425 (Utah 1995).

(Utah Ct.App.1990)). Procedural laws are "concerned solely with the judicial processes." *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick*, 890 P.2d 1017, 1020 n. 3 (Utah 1995) (citing to cases where statutes set out the standard of review in adjudicative proceedings, collection of child support payments, and administrative appeals are procedural, but also noting cases involving statutes that affect the length of time a defendant may withdraw a guilty plea and setting standards for contribution between joint tortfeasors are not procedural).

¶ 28 Special mitigation allows some criminal defendants to argue that they are less culpable for the taking of a life by reason of certain kinds of mental illness. If a defendant is found guilty of aggravated murder, murder, attempted aggravated murder, or attempted murder the law permits a reduction of the level of the conviction by one degree. This is a substantive right. Without section 76–5–205.5, no defendant could argue they should not be treated as harshly by the law on the basis of a delusion that does not amount to legal justification, as defined by the Utah Code. The statute plainly creates and defines the right to present special mitigation to a jury. The complicating factor, and the basis for Mr. Drej's separation-of-powers argument, is subsection (5)(a), which sets out the burdens of proof required by special mitigation. Utah Code Ann. § 76–5–205.5(5)(a) (requiring the defendant to show the "existence of special mitigation ... is established by a preponderance of the evidence"). Mr. Drej argues that the burden of proof component of the special mitigation statute is the procedure the legal machinery uses to give effect to a defendant's substantive right to plead special mitigation.

¶ 29 The interplay between the allocation of a burden of proof and a distinction between procedural rules and substantive rights is a question of first impression for this court. Other state courts, as well as a number of federal courts, have analyzed this question and have reached different outcomes. Some states have held that assignment of a burden of proof is a substantive right as a matter of law. *See, e.g., State v. Fletcher*, 149 Ariz. 187, 717 P.2d 866, 871

(1986) (holding that the "burden of proof is considered substantive" under the Arizona law); *In re Guardianship of Jeremiah T.*, 976 A.2d 955, 960–61 (Me.2009) (finding a change in burden of proof is substantive under the common law). In contrast, a number of jurisdictions have held that the assignment of a burden of proof is always procedural. *See, e.g., Shaps v. Provident Life & Accident Ins. Co.*, 826 So.2d 250, 254 (Fla.2002) ("[G]enerally in Florida the burden of proof is a procedural issue."); *Sudwischer v. Estate of Hoffpauir*, 705 So.2d 724, 729 (La. 1997) ("[A] statute changing a burden of proof is procedural...").

¶ 30 Other courts have declined to create such bright line rules. These jurisdictions opt to treat burdens of proof as substantive when the rule "is inseparably connected with the substantive rights of the parties." *In re Estate of Reardon*, 25 A.D.2d 370, 269 N.Y.S.2d 635, 637 (1966). Likewise, the U.S. Supreme Court drew on this connection linking the substantive right and the procedural rule when it held that Congress has the authority to "assign burdens of proof" after creating "a statutory right." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), *superceded by statute*, Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, *as recognized in Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 132 n. 2, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) (Ginsburg, J., concurring). While the Supreme Court's ruling is clear, it is derived from a reading of the federal separation of powers provision. We are not bound by this holding as Mr. Drej's separation-of-powers argument is based exclusively on the Utah Constitution. Nonetheless, the Supreme Court's statement in *Marathon Pipe Line* regarding the interaction between the substantive right created by the legislation and the procedural components is instructive. For instance, the Court acknowledged that some statutes "do, in a sense, affect the exercise of judicial power." *Id.* Generally, the influence on the judicial process will lead to the conclusion that a statute is procedural. Provisions that "create presumptions, or assign burdens of proof, or prescribe remedies," however, "are also

incidental to Congress' power to define the right that it has created." *Id.* In other words, a procedural rule may be so intertwined with a substantive right that the court must view it as substantive.

¶ 31 We find merit in the model articulated by the Supreme Court. There will be times when the legislature enacts laws that confer substantive rights. At times, the procedures attached to the substantive right cannot be stripped away without leaving the right or duty created meaningless. The burden of proof associated with special mitigation is one of those instances. Utah's special mitigation statute creates a substantive right, which the legislature generally has the authority to enact. But the procedural portion of the statute that requires the defendant to prove special mitigation by a preponderance of the evidence is inextricably connected to the right to plead special mitigation in the first place. Thus, the legislature did not act contrary to Utah's separation of powers provision when it enacted the special mitigation statute by simple majority, as opposed to the super-majority that is required of procedural rules.

### III. EQUAL PROTECTION UNDER THE FEDERAL AND STATE CONSTITUTIONS

¶ 32 Lastly, Mr. Drej argues that the special mitigation statute violates the equal protection guarantee of the Fourteenth Amendment and the uniform operation of laws provision of the Utah Constitution. While known as the uniform operation of laws provision, art. I, section 24 of the Utah Constitution has long been considered the state's equal protection clause; the two "'embody the same general principle.'" *Gallivan v. Walker*, 2002 UT 89, ¶ 31, 54 P.3d 1069 (quoting *Malan v. Lewis*, 693 P.2d 661, 669 (Utah 1984)); *see also Wood v. Univ. of Utah Med. Ctr.*, 2002 UT 134, ¶ 33, 67 P.3d 436 (stating that the uniform operation of laws provision is Utah's "ana-

logue to the federal due process guarantee"); *Blue Cross & Blue Shield of Utah v. State Tax Comm'n*, 779 P.2d 634, 637 (Utah 1989) (stating the provisions are substantially similar). The provision provides that, "[a]ll laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. The equal protection clause found in the Fourteenth Amendment of the U.S. Constitution prohibits the state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

¶ 33 Even though the uniform operation of laws provision is the state's analogue to equal protection under federal law, "our construction and application of Article I, § 24 are not controlled by the federal courts' construction and application of the Equal Protection Clause." *Malan*, 693 P.2d at 670; *see also Gallivan*, 2002 UT 89, ¶ 33, 54 P.3d 1069. The uniform operation of laws clause, however, is "at least as exacting" as its federal counterpart. *Gallivan*, 2002 UT 89, ¶ 33, 54 P.3d 1069 (internal quotation marks omitted).[5] The Utah provision may, "'in some circumstances, [be] more rigorous than the standard applied under the federal constitution.'" *Id.* (quoting *Mountain Fuel Supply Co. v. Salt Lake City Corp.*, 752 P.2d 884, 889 (Utah 1988); *see also Blue Cross & Blue Shield*, 779 P.2d at 637 (stating the guarantees under the Utah Constitution are not only as least as vigorous but "probably more" protective than the federal equal protection clause)). Indeed, the differing "language," "context," and "jurisprudential considerations" found in and surrounding the two provisions have led to differing legal consequences. *Malan*, 693 P.2d at 670; *Gallivan*, 2002 UT 89, ¶ 33, 54 P.3d 1069. The most notable of these differing legal consequences is that article I, section 24 demands more than facial uniformity; the law's operation must be uniform. *Gallivan*, 2002 UT 89, ¶ 37, 54 P.3d 1069. "A law does not operate uniformly if persons similarly situated are not treated similarly." *State v. Mohi*, 901

---

**5.** While Mr. Drej has alleged a constitutional defect under both the federal equal protection clause and the state's uniform operation of laws provision, we need only evaluate special mitigation under the latter because the Utah provision

is at least as rigorous as the federal guarantee. *See ABCO Enters. v. State Tax Comm'n*, 2009 UT 36, ¶ 14, 211 P.3d 382; *Blue Cross & Blue Shield of Utah v. State Tax Comm'n*, 779 P.2d 634, 637 (Utah 1989).

P.2d 991, 997 (Utah 1995) (internal quotation marks and alteration omitted); *see also Blue Cross & Blue Shield,* 779 P.2d at 637 (stating the Utah provision restrains the legislature from "classifying persons in such a manner that those who are similarly situated with respect to the purpose of a law are treated differently by that law").

¶ 34 In analyzing the constitutionality of a statutory scheme under the uniform operation of laws provisions we engage in a three-part inquiry. First, we determine what, if any, classification is created under the statute. *State v. Schofield,* 2002 UT 132, ¶ 12, 63 P.3d 667; *see also Gallivan,* 2002 UT 89, ¶ 43, 54 P.3d 1069. Second, we inquire into whether the classification imposes on similarly situated persons disparate treatment. *Schofield,* 2002 UT 132, ¶ 12, 63 P.3d 667. Finally, we analyze the scheme to determine if "the legislature had any reasonable objective that warrants the disparity." *Id.* (internal quotation marks omitted). The first two parts of this test are a threshold inquiry as to whether a "discriminatory classification exists." *Gallivan,* 2002 UT 89, ¶¶ 44–46, 54 P.3d 1069. Without such a classification, the statutory scheme and the uniform operation of laws never intersect and there is no need to further inquire into the permissibility of the statute. *Id.; see also Merrill,* 2005 UT 34, ¶ 34, 114 P.3d 585 (stating "the creation of classes and the discrimination among them is inherent to all laws" but the law is unconstitutional only if it is "unreasonable or arbitrary" (internal quotation marks omitted)). The third element of Utah's uniform-operation-of-law test, the analysis of the reasonable objectives underlying the disparate treatment, follows one of two, three-part inquiries. *See Mohi,* 901

P.2d at 995 (noting that we apply either a "reasonable in relation" test or a "rationally related" test); *compare Gallivan,* 2002 UT 89, ¶ 42, 54 P.3d 1069 (articulating the reasonable in relation test), *with Blue Cross & Blue Shield,* 779 P.2d at 637 (describing the rationally related test). Which analysis applies depends on the level of scrutiny that must be applied to the statutory scheme.[6] However, given our holding that special mitigation does not impose disparate treatment between classes of criminal defendants, we do not need to engage in this final step of the state's uniform-operation-of-laws analysis.

### A. Classification Created

¶ 35 We turn to the plain language of the statutory scheme to determine what classification is created by a legislative enactment. *See Mohi,* 901 P.2d at 997. Section 76–5–205.5 plainly creates a classification that permits a limited number of criminal defendants to argue that they are entitled to a one-degree reduction in their conviction based on establishing that a delusion led them to commit a criminal act. Utah Code Ann. § 76–5–205.5 (Supp.2009). This classification is a narrow one. The defendant must fall into a class of defendants suffering from a statutorily defined mental illness, and the defendant must act reasonably in light of the delusion. *See* § 76–5–205.5(1)(a). The class is further limited to defendants charged with aggravated murder, murder, attempted aggravated murder, or attempted murder. *Id.* § 76–5–205.5(5)(b).

### B. Disparate Treatment of Delusional Defendants

¶ 36 We have repeatedly noted that the legislature " 'has considerable discretion

---

6. Mr. Drej has attempted to persuade us to apply the federal courts' model of heightened scrutiny to our analysis of the uniform operation of laws. Indeed, equal protection jurisprudence under the federal law flows largely from the standard of review assigned to the state action. *See United States v. Virginia,* 518 U.S. 515, 567, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (Scalia, J., dissenting). We have held, however, that arguments that this court should apply the federal court's strict, intermediate, or rational basis scrutiny to our analysis under the uniform operations of laws provision of the Utah Constitution is "unhelpful." *Gold Cross,* 903 P.2d at 426. "Such

language ... is not readily transposed to the balancing test we apply under the uniform operation of laws provision...." *Id.* Rather than conforming to the federal rubric, we have developed two levels of scrutiny for our analysis of the constitutionality of a statutory scheme under the uniform operation of laws provision. We have also articulated a test to determine when to apply heightened scrutiny to our analysis. *See Gallivan v. Walker,* 2002 UT 89, ¶ 40, 54 P.3d 1069. While we do not need to engage in this analysis in this appeal, we remind parties that our analysis is distinct from that found within federal jurisprudence.

in the designation of classifications.'" *Malan*, 693 P.2d at 671 (quoting *State Tax Comm'n v. Dep't of Finance*, 576 P.2d 1297, 1298 (Utah 1978)). Our corresponding analysis is "'whether such classifications operate equally on all persons similarly situated.'" *Id.* (quoting *State Tax Comm'n*, 576 P.2d at 1298). Disparate treatment exists when the statutory scheme "work[s] a discriminatory hardship on an identifiable group of persons who were singled out for treatment different from that to which other identifiable groups were made subject." *Merrill*, 2005 UT 34, ¶ 38, 114 P.3d 585. Mr. Drej argues that defendants who murder, or attempt to murder, while acting under a delusion prompted by a mental illness are treated disparately under the statute because other defendants charged with murder do not face the same burden of proof in persuading the trier of fact to accept a theory of reduced culpability. Mr. Drej's argument is based entirely on an analogy between special mitigation and the affirmative defense of imperfect self-defense. Mr. Drej's argument is that defendants who argue they are less culpable for a murder on the basis of a delusion are *similarly situated* to those charged with murder who mistakenly believe they are justified in committing a murder, yet the former have a greater burden of proving their claim.

¶ 37 Mr. Drej points to a number of similarities linking a defendant who pleads imperfect self-defense with one who argues for special mitigation. For instance, in both instances the defendant must have "cause[d] the death of another or attempt[ed] to cause the death of another." *Compare* Utah Code Ann. § 76–5–203(4)(Supp.2009) (using the terms "caused" and "attempted") *with id.* § 76–5–205.5(1)(Supp.2009) (using the terms "causes" and "attempts"). Both statutes require the defendant to argue the actions came under a belief of legal justification. *Compare id.* § 76–5–203(4) (requiring the defendant to act "under a reasonable belief that the circumstances provided a legal justification or excuse") *with* § 76–5–205.5(1)(a)(ii)–(iii) (requiring the defendant to act under delusional facts that "would provide a legal justification" and that the defendant's actions were "reasonable"). Finally, both allow a defendant to argue for a one-degree reduc-

tion in criminal culpability. *See* §§ 76–5–203(4)(c), 76–5–205.5(5)(b).

¶ 38 Mere commonality between two statutes is not always sufficient to establish that a legislative classification treats similarly situated persons disparately. *See State v. Honie*, 2002 UT 4, ¶ 24, 57 P.3d 977 (holding that persons charged with aggravated murder and felony murder are not similarly situated despite "common factors" overlapping between the two offenses). Indeed, there are significant differences that prevent us from holding that a defendant arguing special mitigation is similarly situated, and thereby treated disparately, to the defendant who pleads imperfect self-defense. First, the trier of fact must consider a defendant's imperfect self-defense argument when it evaluates the general offense; the defense goes to the intent element of the crime. Special mitigation is only evaluated after the trier of fact has found the defendant guilty of the general charge, including all of its intent elements. Second, defendants who act in a delusional state due to mental illness are arguably different, from a policy standpoint, from defendants who misperceive the events surrounding their conduct. In the latter situation, the trier of fact can undertake an objective assessment from the perspective of the defendant and evaluate whether it was reasonable for the defendant to act as he did. In contrast, the trier of fact in a special mitigation case cannot so easily step into the defendant's place and evaluate his actions. Special mitigation is not based on the objective facts surrounding the defendant, but rather is concerned entirely with what is going on in the mind of the defendant and whether the delusion in question would lead a person to act the way the defendant did. Ultimately, the evidence and facts related to the presence of special mitigation are entirely within the knowledge, memory, and mental processes of the defendant.

¶ 39 Given these distinctions, we conclude that a defendant arguing for special mitigation on the basis of mental illness is not similarly situated to a defendant who argues the affirmative defense of imperfect self-defense. They are both undoubtedly subclasses of criminal defendants charged for

killing, or attempting to kill, another person. But, as we previously have noted, the legislature may treat subclasses of murder defendants differently without imposing disparate treatment of similarly situated persons. Moreover, the procedures and issues at stake in special mitigation cases are distinct from those found in any affirmative defenses of the Utah Code. Given that these defendants are not similarly situated to defendants who plead imperfect self-defense, we need not engage in an analysis of whether the legislature had a reasonable objective in treating them differently. Therefore, special mitigation is constitutional under the uniform operations of laws provision of the Utah Constitution.

### CONCLUSION

¶ 40 In enacting the special mitigation statute, the legislature elected to provide those mentally-ill defendants who act under a delusion a method of reducing their culpability after the state has established every element of the charged offense beyond a reasonable doubt. The balance the legislature has struck is permissible under both state and federal law. First, the statutory scheme is lawful in light of due process and independent state law because special mitigation is neither an affirmative defense nor a substantive offense that may be charged against a defendant. Second, the special mitigation statute is constitutional under the state's separation of powers provision because the burden of proof provision is so connected to the substantive right to mitigation created by the statute that it may not be stripped away. It was constitutionally permissible for the legislature to enact special mitigation by a simple majority vote. Finally, special mitigation is constitutional under the state's uniform operation of laws provision, and thereby lawful under the less-rigorous standards of federal jurisprudence arising from the equal protection clause, because the statute does not impose disparate treatment on similarly situated persons.

¶ 41 We therefore affirm the decision of the district court and remand the case for further proceedings.

¶ 42 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.