*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 83**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

BENJAMIN DAVID RETTIG,
*Appellant.*

No. 20131024
Filed November 22, 2017

On Direct Appeal

Fourth District, American Fork Dep't
The Honorable Thomas Low
No. 101101668

Attorneys:

Sean D. Reyes, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen.,
Salt Lake City, for appellee

Steve S. Christensen, Clinton Brimhall, Salt Lake City, for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, and JUSTICE PEARCE
joined.
JUSTICE DURHAM filed an opinion concurring in the result.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    Benjamin Rettig pled guilty to aggravated murder and
aggravated kidnapping. Three days before his sentencing hearing
and while represented by counsel, Rettig attempted to withdraw his
guilty plea by submitting a *pro se* letter to the district court. Rettig
later acquired new counsel, who moved to withdraw Rettig's *pro se*
motion. The court subsequently sentenced Rettig to terms of twenty-

five years to life for aggravated murder and fifteen years to life for aggravated kidnapping, with the sentences to run concurrently.

¶2 Rettig urges us to set aside his guilty plea on direct appeal, contending that the district court erred in accepting his plea because his plea affidavit does not establish the necessary facts to sustain a conviction for his charges. He also asserts a claim for ineffective assistance of counsel. Recognizing that this court has long held that it cannot review a defendant's guilty plea unless he has complied with Utah's Plea Withdrawal Statute, UTAH CODE § 77-13-6, Rettig also challenges this statute as unconstitutional. He argues that section 77-13-6(2) infringes his right to an appeal under article I, section 12 of the Utah Constitution. And he urges us to hold that the legislature lacks the constitutional power to require that he pursue his claim through the Post-Conviction Remedies Act, as set forth in section 77-13-6(2)(c).

¶3 We affirm. We do so substantially on grounds set forth in the concurring opinion in *Gailey v. State*, 2016 UT 35, 379 P.3d 1278 (Lee, A.C.J., concurring). The majority in *Gailey* held that the Plea Withdrawal Statute "does not on its face violate the constitutional right to appeal." *Id.* ¶ 11. We confirm *Gailey*'s holding and threshold premise. But we also decide an issue that the *Gailey* majority did not reach. We hold that the Plea Withdrawal Statute is constitutional as applied because the statute does not foreclose an appeal but simply sets a rule of preservation and imposes a sanction (waiver of the issue on appeal) for the failure to follow that rule.

I

¶4 In November 2009, Benjamin Rettig and Martin Bond traveled from Vernal, Utah, to the home of Kay Mortensen in Spanish Fork, Utah.[1] Mortensen owned a large supply of firearms that were located in a "bunker" behind his home. Bond and Rettig traveled to his home with the intent to steal some of his firearms. The two entered Mortensen's home with a handgun while wearing ski masks and latex gloves. They zip tied Mortensen and demanded that he show them where his firearms were stored. After Mortensen showed them the bunker, Rettig and Bond took him to an upstairs bathroom. Bond ordered Mortensen to kneel down in front of the tub with his back toward Bond and Rettig. At this point Rettig was holding the handgun and pointing it at Mortensen. Bond withdrew a

---

[1] The facts as to the underlying crime are taken from the Statement of Defendant in Support of Guilty Plea or No Contest and Certificate of Counsel Rettig filed in the district court.

knife from his pocket and then put it back. Bond then went downstairs while Rettig held Mortensen at gunpoint. Bond returned with a larger knife. Rettig then watched as Bond killed Mortensen by slicing his throat multiple times and stabbing him in the base of the neck.

¶5 A short time later Pamela and Roger Mortensen knocked on Mortensen's door. Rettig ran downstairs and hid behind the front door with the handgun while Bond opened the door. When Pamela and Roger entered the home, Rettig ordered them into the living room where he and Bond placed zip ties on their hands and feet. Bond went into the kitchen and returned with another knife. This time Rettig stepped in front of Bond and told him not to kill Pamela and Roger. Rettig stayed in the living room with the handgun while Bond removed approximately twenty-five firearms along with ammunition and placed them in their vehicle. Bond and Rettig told Roger and Pamela to inform the "police that three black men had tied them up and [that] if they told the police a different story, [Rettig and Bond] knew where they lived and . . . would come back and kill them."

¶6 It was not until December 2010 that police arrested Rettig and Bond. Rettig was charged with aggravated murder (a capital offense), two counts of aggravated kidnapping, and aggravated burglary. Rettig obtained counsel and entered a plea agreement whereby he pled guilty to one count of aggravated murder and one count of aggravated kidnapping. As part of the plea agreement the prosecutor dropped the other charges, agreed not to seek the death penalty, and agreed to recommend the possibility of parole.

¶7 Approximately six weeks later, while still represented by his original counsel, Rettig sent a *pro se* letter to the district court seeking to withdraw his guilty plea. He was concerned that his attorney "never asked [him for] an entire statement regarding the events" surrounding the murder. He also raised other concerns. At that point Rettig's counsel withdrew. Rettig then obtained new counsel.

¶8 During the sentencing hearing Rettig's new counsel explained to the district court that he had reviewed Rettig's motion to withdraw and had a "very candid, very open" discussion with his client about his case with some of his staff present. Rettig's new counsel explained to the court that during their discussion he determined that Rettig's motion was based on a "misunderstanding of the application of certain legal terminologies—explained to [Rettig by] . . . jailhouse lawyers"—which led Rettig to have "a false impression on what the law was." To address Rettig's concerns, the new counsel had Rettig explain "at length" the facts of the case and

"gave him numerous opportunities to adjust his facts." His counsel then explained the "legal issues" and "why [Rettig's] arguments weren't wholly accurate." He explained to his client "what the law was and also how those facts that he provided . . . fit into the category of" the charged crimes. Based on these interactions, the new counsel withdrew Rettig's *pro se* motion to withdraw his guilty plea. The district court proceeded with the sentencing hearing on December 13, 2011.

¶9    Rettig later filed this appeal. On appeal he seeks to set aside his guilty plea.

II

¶10 Utah's Plea Withdrawal Statute controls the timing and grounds for a motion to withdraw a guilty plea. The statute requires that the "request to withdraw . . . be made by motion before sentence is announced," UTAH CODE § 77-13-6(2)(b), and that the defendant show that the "plea of guilty . . . was not knowingly and voluntarily made," *id.* § 77-13-6(2)(a). A defendant who fails to seek to withdraw a guilty plea before sentencing is left to raise the issue in a petition filed under the Post-Conviction Remedies Act (PCRA). *Id.* § 77-13-6(2)(c).

¶11 Rettig advances three grounds for establishing that his guilty plea was involuntary. He argues first that his original counsel was ineffective for advising him to plead guilty, second that his later counsel was ineffective for withdrawing Rettig's *pro se* motion to withdraw his guilty plea, and lastly that the facts in his plea affidavit cannot establish sufficient intent for accomplice liability for aggravated murder. We do not reach the merits of these claims because we conclude that we lack appellate jurisdiction to address them given that Rettig failed to preserve his claims by not withdrawing his guilty plea until after sentencing.

¶12 Recognizing our long line of precedents holding that we lack appellate jurisdiction to review untimely withdrawals of guilty pleas, Rettig contends that the Plea Withdrawal Statute is unconstitutional. He advances two principal grounds for challenging the statute. First he argues that the statute violates his right to appeal under article I, section 12 of the Utah Constitution, which provides defendants "the right to appeal in all cases." Second he claims that the legislature lacks the constitutional power to require that he pursue his claim in a PCRA proceeding. *See* UTAH CODE § 77-13-6(2)(c).

¶13 We reject Rettig's constitutional challenges. We conclude that the Plea Withdrawal Statute does not infringe the constitutional

right to appeal because it does not foreclose an appeal but simply establishes a rule of preservation. And we uphold the constitutionality of the subsection (2)(c) reservation of a right to file a post-conviction petition under the PCRA.

A

¶14 Rettig first argues that the Plea Withdrawal Statute infringes his right to appeal under article I, section 12 of the Utah Constitution. Section 12 gives criminal defendants "the right to appeal in all cases." UTAH CONST. art. I, § 12. Rettig asserts that the statute's timing requirement forecloses his right to a direct appeal.

¶15 This court recently confronted this issue in *Gailey v. State*, 2016 UT 35, 379 P.3d 1278. *Gailey* held that the Plea Withdrawal Statute "does not on its face violate the constitutional right to appeal." *Id.* ¶ 11. The court characterized the statute as a "procedural bar" on a defendant's right to withdraw a guilty plea after sentencing. *Id*. We confirm *Gailey*'s holding and threshold premise.

¶16 The *Gailey* majority left open an additional question—whether the Plea Withdrawal Statute could be *applied* in a manner infringing the state constitutional right to appeal. *Id.* The majority opinion deemed that question unripe because the appellant retained a right to challenge the validity of her plea in a post-conviction review proceeding, complained only about the lack of a right to counsel under the PCRA, and could eventually be entitled to counsel in a future proceeding under the PCRA. *Id*. Given the likelihood that Gailey might ultimately be afforded the core element of an appeal that she claimed to be lacking under the PCRA, the majority in *Gailey* reserved for another day an answer to the question whether the Plea Withdrawal Statute could be applied in a manner infringing the constitutional right to an appeal.

¶17 We now reach the question left unanswered in *Gailey*. And we resolve this case on the grounds set forth in the concurring opinion in *Gailey*, *id.* (Lee, A.C.J., concurring), and reinforced by *State v. Allgier*, 2017 UT 84, __ P.3d __. The *Gailey* concurrence noted that "[t]he Plea Withdrawal Statute does not foreclose an appeal" but simply establishes a rule of preservation or waiver. *Gailey*, 2016 UT 35, ¶ 34. It also observed that this effect of the Plea Withdrawal Statute is hardly novel. "Rules of this sort are commonplace." *Id*. ¶ 35. "They are embedded in our caselaw under the law of preservation and reflected in our rules of procedure." *Id*. (footnote omitted). Such rules establish standards of preservation: They "require parties to raise issues or arguments at specified times and by certain means." *Id.* And they establish a sanction for the failure to preserve: "[T]hey treat a failure to comply [with the preservation

standard] as a waiver of the right to raise such issues later in the litigation." *Id.*

¶18   This highlights the core defect in Rettig's argument. Rules requiring preservation of an issue at specific times and by required means "have never been thought to impinge on the constitutional right to an appeal." *Id.* ¶ 36. Such rules simply establish the concept of waiver in litigation. And that is uncontroversial.

¶19   "Rules of preservation and waiver or forfeiture *always* foreclose the right to raise an issue on appeal." *Id.* ¶ 43. "They cannot be unconstitutional on that basis alone, unless we are prepared to say that such rules are *per se* unconstitutional." *Id.* And of course we cannot so conclude. Rules of preservation are a longstanding component of the law of procedure in the trial courts. We hold that such rules do not infringe the right to an appeal.

¶20   The Plea Withdrawal Statute is like rule 12 of the rules of criminal procedure. Both set timing requirements for the filing of certain motions (a preservation rule). And both prescribe sanctions for the failure to meet the required deadline (waiver, with a bar on even plain error review).

¶21   Such rules do not "foreclose an appeal." *Id.* ¶ 34. They simply prescribe a sanction for the failure to satisfy the timing deadlines set forth in the rule. And that effect is as wide-ranging as it is commonplace. We would not think to strike down criminal rule 12 as foreclosing the state constitutional right to an appeal. We would reject that claim on the ground that rules of preservation and waiver simply narrow the issues to be raised on appeal.

¶22   We reach that same conclusion here. We hold that the Plea Withdrawal Statute is not an infringement of the state constitutional right to an appeal because it does not foreclose an appeal but only narrows the issues that may be raised on appeal.

¶23   In so concluding we are not suggesting that no timing requirement could infringe a criminal defendant's right to appeal. A thirty-minute filing requirement for a notice of appeal would undoubtedly infringe the state constitutional right to appeal. And perhaps an "absurdly short" time window for withdrawal of a guilty plea would be similarly problematic. *Infra* ¶ 109. If an operative rule of preservation eliminates any meaningful avenue for appellate

review then it could certainly be said to infringe the important right to an appeal.[2]

¶24 But Rettig is not challenging the Plea Withdrawal Statute on this ground. The argument here goes not to the length of the time window for filing a motion to withdraw a guilty plea but to the procedural bar imposed for missing that filing deadline. And that effect of the Plea Withdrawal Statute is hardly unusual. We cannot strike it down on that basis unless we are willing to call into question any of a range of case-based or rules-based principles of preservation and waiver. We uphold the Plea Withdrawal Statute on that basis. The statute does not infringe the constitutional right to appeal but only sets the terms and conditions for preservation and waiver.

¶25 The concurrence resists this approach on the ground that rules of preservation or waiver are always subject to exceptions—for plain error or ineffective assistance of counsel. *See infra* ¶¶ 88–90. Because our cases have treated the Plea Withdrawal Statute as establishing a "jurisdictional" bar *not* subject to plain error review, the concurrence claims that my approach will unsettle our case law in this field. *Infra* ¶¶ 91–93.

¶26 This is a false dichotomy. Not every rule of preservation or waiver is subject to a plain error or ineffective assistance of counsel exception. Some such rules are "jurisdictional" in the sense of foreclosing these exceptions. The Plea Withdrawal Statute is unquestionably that kind of rule. But it is also unquestionably a rule of preservation or waiver—not a statute barring an appeal.

¶27 The standard set forth in the Plea Withdrawal Statute is *both* a rule of preservation and a jurisdictional bar on appellate consideration of matters not properly preserved. This is not unique to the Plea Withdrawal Statute. Some of the preservation standards in our rules of procedure are along the same lines—they prescribe a rule of preservation and establish a waiver sanction that stands as a jurisdictional bar on appellate consideration of matters not properly preserved. *See, e.g.*, UTAH R. CIV. P. 12(h); UTAH R. CRIM. P. 12(f); *infra*

---

[2] An unreasonably short deadline foreclosing meaningful access to the judicial system could also potentially be challenged under the Open Courts Clause or Due Process Clause. But no such claim has been asserted here, and we express no opinion on the merits of these challenges.

¶¶ 28–33 (discussing these rules and explaining that a preservation rule can establish a jurisdictional bar on appeal).

1

¶28 The law of preservation or waiver is diverse. Some such rules are set forth in common law decisions of this court. Our cases, for example, articulate the general rule that an appellant may not raise an error on appeal unless he has given the trial court a meaningful opportunity to avoid that error below. *See, e.g., Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 46, 321 P.3d 1054. This is the common law of preservation. And this general rule is subject to exceptions established by our case law—principally in the doctrines of plain error and ineffective assistance of counsel. *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (plain error); *State v. Griffin*, 2016 UT 33, ¶ 22, 384 P.3d 186 (ineffective assistance of counsel).

¶29 Other rules of preservation or waiver are set forth in the rules of procedure promulgated by this court. The criminal rules, for example, require that certain motions (like a motion for a change of venue) be made "not later than 14 days after the party learns" of the "grounds" for the motion, UTAH R. CRIM. P. 29(d)(5), and that others (such as a request for severance of charges) "be raised at least 7 days prior to the trial," *id.* 12(c). Standards of preservation or waiver also appear in criminal rules 19 and 24. *See also id.* 19(e) (requiring that a party raise an objection to a written jury instruction "before the instructions are given to the jury"); *id.* 24(c) (mandating that a motion for new trial be made "not later than 14 days after entry of the sentence, or within such further time as the court may fix").

¶30 The operative rule on preservation and waiver in the civil realm is civil rule 12. Rule 12(a) generally requires a defendant to "serve an answer within 21 days after the service of the summons and complaint is complete." UTAH R. CIV. P. 12(a). It also says that this general standard is altered where the defendant files a "motion under this rule"—the answer is then due "within 14 days after notice of the court's action." *Id.* 12(a)(1). Civil rule 12 also says that certain matters must be raised by motion. It says that a defense of lack of jurisdiction, venue, insufficiency of process or service, failure to state a claim, or failure to join an indispensable party, should be raised by a motion filed "before pleading if a further pleading is permitted." *Id.* (12)(b).

¶31 Rule 12 also prescribes the consequence—typically waiver—resulting from the failure to follow these rules of preservation. It states that the failure to include in a motion a defense

"then available which this rule permits to be raised by motion" forecloses the party's right "thereafter" to "make a motion based on any of the defenses or objections so omitted, except as provided in subdivision (h)." *Id.* 12(g). And rule 12(h) sets forth an express sanction of waiver. *See id.* 12(h) (waiver of certain defenses if not presented by motion or answer or reply).

¶32 The above rules may or may not be subject to common law exceptions to the case-based rule of preservation. It all depends on the language and structure of the applicable rule of procedure. A motion for severance of criminal charges, for example, would be deemed to be waived under criminal rule 12 if made for the first time after trial—without regard to the "plainness" of any error in the failure to sever.[3] The same goes for the preservation rules in civil rule 12. We would not allow a waived 12(b)(4) motion for insufficiency of process to be made at trial *no matter how plain the insufficiency of process*. That is because the preservation standards in both criminal rule 12 and civil rule 12 are clear and comprehensive—they occupy the field and would be undermined by the invocation of a plain error exception.[4]

¶33 This is a principle of waiver that goes to our appellate "jurisdiction." The waiver sanction prescribed by criminal rule 12 and civil rule 12 is "jurisdictional" in the sense that it forecloses

---

[3] *See United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999) (holding that waiver of a rule 12 defense leaves an appellate court "without authority to reverse a conviction" on plain error grounds; noting that a plain error exception to rule 12 would mean that rule 12(f) "would have no consequence").

[4] Granted, not every "procedural rule with a time restriction" is an issue of preservation establishing a "jurisdictional" bar. *Infra* ¶¶ 77, 132. Some of the preservation standards in our rules of procedure surely leave room for plain error analysis. Criminal rule 19, for example, expressly states that a jury instruction that is not challenged as required under the rule "may not be assigned as error except to avoid a manifest injustice." UTAH R. CRIM. P. 19(e). And we have interpreted that as an invocation of the plain error exception. *See State v. Casey*, 2003 UT 55, ¶¶ 39–40, 82 P.3d 1106 (noting that "'manifest injustice' is synonymous with the 'plain error' standard"). But that supports my point: some preservation rules are subject to an exception for review for plain error and others are not; it all depends on the language and structure of the rule.

appellate consideration of the merits of the waived matter.[5] If a party who has waived a severance or service of process defense in the district court seeks to raise it on appeal we would say that the merits of that defense falls outside the jurisdiction of the appellate court. *Cf. United States v. Murillo*, 288 F.3d 1126, 1135 (9th Cir. 2002) (the failure to allege lack of probable cause in a pre-trial motion to suppress "places the issue beyond the scope of our ability to review for plain error" (citation omitted)).

¶34 Thus, the dichotomy put forward by the concurrence is mistaken. It is not correct to say that the Plea Withdrawal Statute must either establish a jurisdictional bar *or* announce a rule of preservation. *See infra* ¶¶ 87–90 (advancing the view that the statute was once viewed as a rule of preservation but has since been characterized as establishing a rule of jurisdiction). It is both. It establishes a standard of preservation—a motion to withdraw a guilty plea must be filed "before sentence is announced," UTAH CODE § 77-13-6(2)(b)—*and* it imposes a strict sanction of waiver that is not subject to any common-law exceptions (such as plain error).

¶35 Thus, it is not correct to say that rules of "[w]aiver and preservation do not create [a] jurisdictional bar." *Infra* ¶ 94. Nor can we properly say that "the jurisdiction of our courts 'is established [only] by the Utah Constitution and by statute.'" *Infra* ¶ 70 (quoting *S. Utah Wilderness All. v. Bd. of State Lands & Forestry of State*, 830 P.2d 233, 234 (Utah 1992)). Rules of preservation and waiver may sometimes create a "jurisdictional bar"; they do so in the sense that they foreclose the power of the court to consider issues not properly

---

[5] We have never held that criminal or civil rule 12 is "jurisdictional," *see infra* ¶ 77, but the language and structure of these rules indicate that they impose a jurisdictional bar. And courts in other jurisdictions have treated them as so doing. *See Weathers*, 186 F.3d at 955 (holding that criminal rule 12 not subject to plain error review and noting that the rule thus deprives an appellate court of "authority to reverse a conviction" on waived grounds); *United States v. Green*, 691 F.3d 960, 965 (8th Cir. 2012) ("[U]ntimely objections that come within the ambit of [civil rule 12] must be considered waivers and may not be revived on appeal." (second alteration in original) (citation omitted)).

Our point is not to treat "every statute and procedural rule with a time restriction" as jurisdictional. *See infra* ¶ 132. It is to note that some such timing rules establish a jurisdictional bar; and that the Plea Withdrawal Statute fits that mold.

preserved and barred by a principle of waiver. And the power to regulate this kind of "jurisdiction" is not vested exclusively (or even principally) in the legislature; this kind of "jurisdictional bar" is a proper subject for our rules of procedure.

¶36 The confusion in the concurrence's opinion on these points flows from an oversimplification of the term "jurisdiction." "The notion of 'jurisdiction' is a slippery one." *In re Adoption of B.B.*, 2017 UT 59, ¶ 125, __ P.3d__ (Lee, A.C.J., opinion of the court in part). "This is a word that means different things in different circumstances." *Id.* "Sometimes it is used to characterize the scope of a court's power to issue a certain form of relief." *Id.* But this is not the only operative principle of "jurisdiction." When we speak of subject-matter jurisdiction we are speaking of "statutory limits on the class of cases assigned to the authority of a certain court" and "other limits that go to the concept of justiciability." *Id.* ¶ 129.

¶37 The concurrence is right to note that the constitutional authority to regulate subject-matter jurisdiction is vested in the legislature. *Infra* ¶ 70. To the extent we are talking about *subject-matter jurisdiction* it is correct to say that jurisdiction is not regulated by our rules of preservation. *Infra* ¶ 70. But it does not follow that rules of preservation and waiver cannot establish a "jurisdictional bar." Such rules do that quite routinely. Criminal and civil rules 12 are prime examples. These rules establish a "procedural bar" on the issues that may be raised on appeal. In that sense they regulate "jurisdiction" by limiting "the scope of a court's power to issue a certain form of relief." *In re Adoption of B.B.*, 2017 UT 59, ¶ 125 (Lee, A.C.J., opinion of the court in part).

¶38 Preservation rules are well within our constitutional power. "[T]he Utah Constitution *does*" indicate that this sort of jurisdictional bar is a matter within our power to regulate by the promulgation of a rule of procedure. *Infra* ¶ 70 (emphasis added). We have the power to promulgate this kind of rule because it is procedural. *See infra* ¶ 119. And the effect of this kind of rule is properly viewed as "jurisdictional" in the narrow sense of regulating the scope of a court's authority to address a certain issue.[6]

---

[6] The concurrence contends that rules of procedure cannot be jurisdictional because "we can simply amend those rules tomorrow." *Infra* ¶ 79. But our authority to promulgate and amend rules of procedure does not encompass the right to ignore the rules once

(continued . . .)

¶39 Thus, we cannot properly say that "[p]reservation is only an issue in cases in which we have jurisdiction." *Infra* ¶ 97. That may hold for *subject-matter jurisdiction*.[7] But not for the more limited notion of jurisdiction in the sense of power to reach a certain question presented. An issue raised on appeal may be procedurally barred on the ground that it was not preserved and accordingly waived. And at least sometimes such issues will be subject to a "jurisdictional bar"—the kind of bar we treat as unaffected by common-law exceptions such as "plain error."

¶40 Our appellate jurisdiction is limited by both statute and by rules of civil and appellate procedure. But they do so in different ways. Our rules generally inform and circumscribe our jurisdiction in the sense of limiting our authority to decide certain issues. The statutes cited by the concurrence, *see infra* ¶ 99 & n.25, on the other hand, generally regulate our subject-matter jurisdiction.

¶41 Thus, the concurrence's conclusions are overbroad. They suffer from an oversimplification of the multi-faceted term "jurisdiction." Once we clarify that the notion of a "jurisdictional bar" goes to a narrow notion of *jurisdiction*—to the idea of a court's authority to reach a certain issue—it becomes clear that the Plea Withdrawal Statute is *both* a rule of preservation and waiver *and* a rule of jurisdiction.

¶42 We interpret the statute to foreclose review for plain error or ineffective assistance of counsel because the statute speaks directly and comprehensively to the result of failure to move to

---

(continued . . .)

adopted—or to decline to impose the sanction for failing to follow them. And our power to amend a rule does not mean that it is not jurisdictional.

[7] This narrow notion of jurisdiction is not a "subset" of subject-matter jurisdiction. *See infra* ¶ 74. We have subject-matter jurisdiction to review plea withdrawals. And we may exercise that jurisdiction in every case except where the appellant has failed to withdraw the plea before sentencing, in which case we lose appellate jurisdiction. The concurrence acknowledges that we do not lose subject-subject matter jurisdiction in an analogous situation—when a party fails to file a timely notice of appeal. *Infra* ¶ 80. And the timing requirement is "jurisdictional in nature" because an "appellate court simply has no power to hear the case if a notice of appeal is untimely." *State v. Collins*, 2014 UT 61, ¶ 22, 342 P.3d 789.

withdraw prior to sentencing. It does so by stating that "[a]ny challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued" under the PCRA. UTAH CODE § 77-13-6(2)(c). And our cases have characterized this effect as "jurisdictional." *See State v. Merrill*, 2005 UT 34, ¶ 20, 114 P.3d 585 (section 77-13-6(2)(b) is "jurisdictional"); *State v. Reyes*, 2002 UT 13, ¶ 3, 40 P.3d 630 (same).

¶43   But that doesn't mean that the statute is not prescribing a rule of preservation. The jurisdictional effect of the Plea Withdrawal Statute is the same as the jurisdictional effect of criminal rule 29 on a motion to sever, or civil rule 12 on an insufficiency of process motion. The statute and these rules all do the same thing: (a) they set a time for filing a particular kind of motion (a rule of preservation); (b) they prescribe a consequence for failing to file in time (waiver of the issue); and (c) they preclude consideration of the merits of the issue on appeal (in a manner we treat as jurisdictional).

¶44 That shows that the dichotomy advanced by the concurrence is a false one. The Plea Withdrawal Statute is not different in kind from at least some of the standards of preservation and waiver in our rules of procedure. And for that reason the statute can easily be viewed as establishing both a preservation rule and a waiver sanction that stands as a jurisdictional bar on appellate review even for plain error or ineffective assistance of counsel.

2

¶45   The approach we take today is consistent with the approach this court took in *State v. Gibbons*, 740 P.2d 1309, 1311 (Utah 1987), under the 1980 version of the Plea Withdrawal Statute. The statute at issue in *Gibbons* is quite distinct from the one in place now. The 1980 statute "set[] no time limit for filing a motion to withdraw [a guilty] plea." *Gibbons*, 740 P.2d at 1311. With that in mind, the *Gibbons* court was concerned about the possibility that a motion to withdraw could be filed while the case was pending on appeal—either mooting the current appeal (if the motion were granted) or at least introducing "the possibility of appeals from two different judgments in the same criminal case." *Id.* On that basis the *Gibbons* court "remand[ed] the case to enable the defendant to file a motion to withdraw his guilty pleas" while "retain[ing] jurisdiction over the case for any necessary future action." *Id.*

¶46   Our cases later viewed *Gibbons* as opening the door to consideration of the merits of an unpreserved motion to withdraw a guilty plea "if plain error or exceptional circumstances exist[ed]." *State v. Marvin*, 964 P.2d 313, 318 (Utah 1998), *superseded by statute as*

*stated in Reyes*, 2002 UT 13, ¶ 4. But that was premised on the analysis in *Gibbons*—which turned on the language and structure of the then-controlling version of the Plea Withdrawal Statute (which set no time limit on a motion to withdraw). The *Gibbons* line of cases, in other words, viewed the 1980 Plea Withdrawal Statute as establishing no standard of preservation to begin with (no time limit on filing a motion). Alternatively, these cases can be understood to view the 1980 statute as opening the door to plain error review of the merits of an unpreserved motion to withdraw *because* the statute set no time limit. But that is not because rules of preservation are always subject to plain error review. It is because the court viewed the controlling statute to be open to such review.

¶47   And that conclusion cannot hold under the current version of the Plea Withdrawal Statute. That statute sets a strict rule of preservation—a requirement that a motion to withdraw be filed before the sentence is imposed. UTAH CODE § 77-13-6(2)(b).  And it prescribes a strict waiver sanction that forecloses review for plain error on direct appeal. *Id.* § 77-13-6(2)(c) ("*Any challenge* to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued under" the PCRA. (emphasis added)).

¶48   This was the basis for our decision to decline to extend *Marvin* to the amended version of the Plea Withdrawal Statute at issue in *Reyes*, 2002 UT 13, ¶ 4. Our point in *Reyes* was not that statutory standards for filing plea withdrawal motions go inherently to "jurisdiction" and not "preservation" (as the concurrence here suggests). It was that the 1989 amendment to the Plea Withdrawal Statute set a strict time deadline[8] for filing a motion to withdraw and that a failure to meet that deadline "extinguishes a defendant's right to challenge the validity of the guilty plea on appeal." *Reyes*, 2002 UT 13, ¶ 3. And it was that conclusion—rooted in the language and structure of the statute—that led to the *Reyes* court's determination that the Plea Withdrawal Statute foreclosed plain error review of the merits of an unpreserved motion to withdraw.

¶49   For these reasons our approach does not overturn the *Reyes* decision. *Infra* ¶ 91. It is fully consistent with *Reyes*. The current Plea

---

[8] The statute at issue in *Reyes* was similar to the current version. But instead of requiring a motion to withdraw before the sentence is imposed, the statute at issue in *Reyes* required the motion to be filed within 30 days after entry of the plea. *Reyes*, 2002 UT 13, ¶ 4 (citing Utah Code section 77-13-6 (1989)).

Withdrawal Statute establishes a preservation standard that stands as a jurisdictional bar to plain error review.

¶50 The *Reyes* line of cases all say the same thing. They all arise under a version of the Plea Withdrawal Statute that establishes a strict time standard for preservation of a motion to withdraw a guilty plea—and imposes a strict sanction of waiver without the possibility of direct review for plain error or ineffective assistance of counsel.[9] In that setting it is completely correct to refer to the Plea Withdrawal Statute, as *Reyes* did, as establishing a "jurisdictional" bar on appellate review for plain error or ineffective assistance. And we are making the same point here.

¶51 Thus, it is not accurate to say that the Plea Withdrawal Statute (as establishing a standard of preservation) requires us to analyze whether Rettig received ineffective assistance of counsel or was a victim of plain error. The Plea Withdrawal Statute is a jurisdictional bar on direct review of these issues. It also establishes a rule of preservation.

B

¶52 Rettig also challenges section 77-13-6(2)(c), arguing that the legislature lacks the authority under article VIII, section 4 of the Utah Constitution to require that he pursue his claim through the PCRA. We hold that the legislature acted clearly within its constitutional authority in enacting subsection (2)(c) of the Plea Withdrawal Statute. And Rettig has not asserted a challenge to subsection (2)(b).

¶53 Subsection (2)(c) states that a "challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued" under the PCRA. UTAH CODE § 77-13-6(2)(c). This is the establishment of a new legal remedy—a quintessential matter of substance.[10] That is dispositive. The establishment of a new remedy is a core matter of substance—clearly within the power of the legislature. *See Petty v. Clark*, 192 P.2d 589, 593 (Utah 1948)

---

[9] *Reyes*, 2002 UT 13, ¶ 4 (addressing the 1989 version of section 77-13-6); *State v. Wright*, 2002 UT App 180 (1989 version); *State v. Rhinehart*, 2007 UT 61, ¶ 2, 167 P.3d 1046 (current—post-2003—statute); *State v. Lee*, 2011 UT App 356, ¶ 2, 264 P.3d 239 (current).

[10] To some degree the concurrence seems to agree. It notes that subsection (2)(c) "arguably gives the defendant the right to bring [an ineffective assistance of counsel] claim under the PCRA. *Infra* ¶ 115.

("Substantive law is . . . the positive law which creates, defines[,] and regulates the rights and duties of the parties and which may give rise to a cause [of] action."); *see also State v. Drej*, 2010 UT 35, ¶ 26, 233 P.3d 476 (quoting *Petty*, 192 P.2d at 593). And Rettig accordingly cannot claim that subsection 2(c) encroaches on the court's power to promulgate rules of "procedure" under article VIII, section 4 of the constitution.

¶54 This is the approach taken by the concurrence in *Gailey*. The concurrence noted the existence of a "fair question" about the legislature's constitutional authority to adopt a rule of preservation in the Plea Withdrawal Statute. *Gailey*, 2016 UT 35, ¶ 45 (Lee, A.C.J., concurring). It cited article VIII, section 4 of the Utah Constitution, which recognizes this court's power to "adopt rules of procedure and evidence to be used in the courts of the state" and to "manage the appellate process" but acknowledges the legislature's power to "amend" such rules "upon a vote of two-thirds of all members of both houses." *Id.* (quoting UTAH CONST. art. VIII, § 4).

¶55 The concurrence alludes to this same important issue. It asserts that the Plea Withdrawal Statute "contains both procedural and substantive components," *infra* ¶ 125, and suggests that "purely procedural" components of the statute may be beyond the legislature's authority under article VIII, section 4, as illuminated by our opinion in *Brown v. Cox*, 2017 UT 3, 387 P.3d 1040, *infra* ¶ 120. That said, the concurrence ultimately rejects Rettig's article VIII, section 4 challenge to subsection 2(c) of the Plea Withdrawal Statute. And in so doing it characterizes various provisions of the statute as either "procedural" or "substantive" and holds that the only provision challenged by Rettig—subsection 2(c)—is so "inextricably intertwined" with substantive elements of the statute that it is "substantive" and thus within the legislature's power under article VIII, section 4. *Infra* ¶ 125.

¶56 The concurrence's discussion of the "procedural" and "substantive" elements of the statute is both troubling and unnecessarily confusing. It confounds our law by suggesting that subsection (2)(c) may be "procedural in that it manages the judicial process by directing defendants to the PCRA." *Infra* ¶ 125. And it multiplies the confusion by treating subsection (2)(b) as

"substantive" (or at least "inextricably intertwined" with substantive law). *See infra* ¶ 125. This gets the matter backwards.[11]

¶57 Subsection (2)(c) is a classic matter of substance in that it establishes a new remedy or cause of action. And it doesn't become quasi-procedural just because we refer to it as a provision that "manages the judicial process." *Infra* ¶ 125. (In that sense any new cause of action would be procedural, and this court would have the power to promulgate a rule of "procedure" establishing a new cause of action in tort or contract.)

¶58 Subsection (2)(b), by contrast, is quintessentially procedural—in that it prescribes the manner and means of raising a particular issue in court proceedings. *See Petty*, 192 P.2d at 593–94 (procedural rules or laws "pertain[] to and prescribe[] the practice

---

[11] The substance-procedure distinction is a wide-ranging one in the law. *See Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108 (1945) (noting that the substance-procedure distinction is "relevant to questions pertaining to ex post facto legislation, the impairment of the obligations of contract, the enforcement of federal rights in the State courts[,] and the multitudinous phases of the conflict of laws"). And the slippery, varying nature of these terms has been often acknowledged. *See id.*

The line between substance and procedure under one legal construct may often differ from the line between those terms in a different construct. *See id.* (noting that "'substance' and 'procedure' are the same key-words to very different problems," that "[n]either 'substance' nor 'procedure' represents the same invariants," and that "[e]ach implies different variables depending upon the particular problem for which it is used"). Thus, the fact that a statute is sufficiently "substantive" to bar its retroactive application doesn't tell us anything meaningful about whether it is "substantive" under article VIII, section 4—a provision reserving the power to "adopt rules of procedure" for this court, while (implicitly) leaving for the legislature the power to adopt substantive law. *See* UTAH CONST. art. VIII, § 4.

And on that score it is troubling to suggest that a time deadline for filing in the trial court could be a matter within the legislature's power if it merely "cut[s] off substantive rights." *Infra* ¶ 123. Most time deadlines, if missed, can extinguish a substantive right. If that characterization is enough to give the legislature the power to promulgate a rule then the limitation in article VIII, section 4 may easily be erased.

and procedure or the legal machinery by which" cases are conducted); *Drej*, 2010 UT 35, ¶ 27 ("Statutes are purely procedural only where they provide a different mode or form of procedure for enforcing substantive rights. . . . Procedural laws are concerned solely with the judicial processes." (internal quotation marks omitted)). You can't get much more procedural than a filing deadline.[12] Yet the concurrence implies the contrary by suggesting that subsection (2)(c) (which it views as at least partly procedural) might nonetheless fall within the legislature's authority over matters of substance because it is "inextricably intertwined" with the "substantive" time limit in subsection (2)(b).[13] *See infra* ¶ 125.

¶59 Again that is backwards. We don't need to get into the "inextricable" connectedness between these two provisions because

---

[12] The establishment of filing deadlines is perhaps the most rudimentary form of procedure. So if we treat the power to regulate *appellate jurisdiction* as encompassing the power to set filing deadlines *in the trial courts*, then the legislature will have the power to promulgate even basic rules of procedure (establishing time deadlines). That cannot follow unless we are prepared to allow the article VIII, section 3 power to regulate "appellate jurisdiction" to swallow the prohibition in article VIII, section 4 on the legislature promulgating rules of "procedure." The concurrence's analysis suggests just that, in a case in which we have no need to consider this question.

[13] "[A] statute of limitations is a filing deadline in a district court." *Infra* ¶ 130. But this kind of filing deadline has long been understood to fall within the domain of the legislature. *See Fortier v. Traynor*, 330 N.W.2d 513, 515 (N.D. 1983) (noting that setting statutes of limitation "historically has been the function of the Legislature"); *Aicher ex rel. LaBarge v. Wisc. Patients Comp. Fund*, 613 N.W.2d 849, 865 (Wis. 2000) ("Statutes limiting the time period for filing actions historically have been policy decisions within the province of the legislature."). On that basis we can easily respect the legislature's power to enact statutes of limitations without overriding the terms of article VIII, section 4. Statutes of limitations are an historical exception to the general rule that rules of procedure are the domain of the courts.

subsection (2)(c) is clearly substantive and subsection (2)(b) is not challenged by Rettig.[14]

¶60　We do not need to reach whether subsections (2)(b) and (2)(c) are "inextricably intertwined" in a manner insulating the broader statutory scheme from challenge (even if one of these provisions is procedural). *See infra* ¶ 125. This question is not properly presented, as again the only provision that is challenged by Rettig—subsection 2(c)—is plainly within the legislature's constitutional power. And the "inextricably intertwined" analysis in the concurrence at least implies that subsection (2)(b) would withstand scrutiny under article VIII, section 4 even if it is plainly procedural. We have doubts on that point but do not forecast an answer to it here.[15]

---

[14] For these reasons we are not at all saying that the Plea Withdrawal Statute is constitutional because "the jurisdictional bar is created through a rule of preservation." *Infra* ¶ 85. Quite the contrary. The procedural dimension of the preservation rule in the statute—the time deadline it sets for the filing of motions—may be a potent basis for questioning the constitutionality of this statute under article VIII, section 4. The problem is that Rettig has not asserted an article VIII, section 4 challenge to this procedural bar (in subsection 2(b)).

[15] *State v. Drej*, 2010 UT 35, 233 P.3d 476, addressed a more complex problem than the one presented here. There we considered whether a statute that allocating burdens of proof for special mitigation at trial was procedural or substantive. On that question, we noted that some state courts had "held that assignment of a burden of proof is a substantive right as a matter of law" while others had "held that the assignment of a burden of proof is always procedural." *Id.* ¶ 29. We also identified a third set of state courts (and the U.S. Supreme Court) that had "declined to create such bright line rules," choosing instead "to treat burdens of proof as substantive when the rule 'is inseparably connected with the substantive rights of the parties.'" *Id.* ¶ 30 (citation omitted). Faced with a difficult problem of categorizing the burden of proof, we followed this latter path in *Drej*. But we have no occasion to pursue that course here because the only provision challenged—subsection 2(c)—is quite obviously within the legislature's authority.

III

¶61   We conclude that Rettig's two constitutional challenges to the Plea Withdrawal Statute fail. The statute establishes a rule of preservation, and such rules do not foreclose an appeal. We also hold that the legislature acted clearly within its constitutional authority in enacting subsection (2)(c) of the Plea Withdrawal Statute. We therefore lack appellate jurisdiction to address Rettig's underlying voluntariness claims under section 77-13-6(2)(a).

———————

JUSTICE DURHAM, concurring in the result:

¶62   As the majority acknowledges, we must determine if we have jurisdiction before we can address Mr. Rettig's substantive arguments that he should be allowed to withdraw his guilty plea. Mr. Rettig has brought two constitutional challenges to the Plea Withdrawal Statute's jurisdictional bar.[16] First, he argues that the Plea Withdrawal Statute violates his constitutional right to appeal and the associated rights to effective assistance of counsel and paid counsel on direct appeal. Alternatively, he argues that the legislature exceeded its constitutional authority under article VIII, section 4, by passing subsection (2)(c) of the Plea Withdrawal Statute. The majority holds that he has failed to establish that we have jurisdiction over this appeal. While I agree that Mr. Rettig has failed to establish that we have jurisdiction, I disagree with the majority's analysis of the constitutional right to appeal and of the

————————————

[16] Mr. Rettig also brought a third constitutional challenge to the Plea Withdrawal Statute, but it was not a direct challenge to the jurisdictional bar. The Plea Withdrawal Statute only allows a defendant to withdraw a guilty plea if he can establish that it was unknowingly or involuntarily entered, even if a defendant is afforded ineffective assistance of counsel. UTAH CODE § 77-13-6(2)(a); *State v. Rhinehart*, 2007 UT 61, ¶ 13, 167 P.3d 1046 ("The ineffectiveness of counsel that contributes to a flawed guilty plea, however, can spare a defendant the consequences of her plea only if the defendant makes out the same case required of every defendant who seeks to withdraw a plea: that the plea was not knowing and voluntary."). Mr. Rettig argues this unconstitutionally limits a defendant's ability to withdraw a guilty plea for ineffective assistance of counsel. The majority does not address this constitutional challenge, likely because it holds that we do not have jurisdiction over this appeal.

constitutionality of Utah Code section 77-13-6(2)(c) under article VIII, section 4 of the Utah Constitution. I address my concerns with each.

## I. THE CONSTITUTIONAL RIGHT TO APPEAL

¶63    To avoid the jurisdictional bar, Mr. Rettig argues that the Plea Withdrawal Statute violates his constitutional "right to appeal in all cases." *see* UTAH CONST. art. I, § 12. He also argues that this violates his associated right to the "effective assistance of an attorney" on direct appeal, *see Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *cf. Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985) (right to effective counsel in "the plea process"), and his "right to state-paid counsel" on direct appeal, *Gailey v. State*, 2016 UT 35, ¶ 26, 379 P.3d 1278. The majority dismisses these arguments, holding that the Plea Withdrawal Statute creates both an issue of preservation and an issue of jurisdiction, although we have never so held before. *Supra* ¶ 26. It justifies this bold new approach through two steps. First, it establishes a new category of jurisdiction, one that we have never expressly recognized. *Supra* ¶¶ 35–42. Second, it creates a new branch of preservation when a statute includes timing requirements that may or may not be subject to the common law exceptions to preservation. *Supra* ¶¶ 28–32. I disagree with the majority's view of our jurisdiction, our rules of preservation, and how these two doctrines apply.

¶64    I first discuss the issues I see with the majority's creation of a new category of jurisdiction. Next, I address my concerns with the majority's analysis concerning preservation. Finally, I address why I believe the majority's analysis concerning the Plea Withdrawal Statute under the constitutional right to appeal is incorrect.

### A. Jurisdiction

¶65    When a defendant fails to move to withdraw a guilty plea prior to sentencing, we have interpreted the Plea Withdrawal Statute as cutting off the jurisdiction of our district courts, and as either cutting off the jurisdiction of the court of appeals or as requiring us to exercise our jurisdiction only through a PCRA proceeding. UTAH CODE § 77-13-6(2)(c); *see also Gailey*, 2016 UT 35, ¶¶ 17–18 (Utah Code section 77-13-6(2)(c) "expressly provide[s] that the right to withdraw a plea is extinguished" after sentencing). We have previously recognized appellate, subject matter, and personal jurisdiction, and have often used the hazy term "jurisdiction" without any classification or definition.

¶66    In an attempt to treat the Plea Withdrawal Statute as both an issue of jurisdiction and an issue of preservation, the majority

establishes a new, amorphous category of jurisdiction that it broadly defines as the "power [of a court] to reach a certain question presented." *Supra* ¶ 39. It then goes on to state that "the power to regulate this kind of 'jurisdiction' is not vested exclusively (or even principally) in the legislature; this kind of 'jurisdictional bar' is a proper subject for our rules of procedure." *Supra* ¶ 35. Because of this, the majority holds that "[r]ules of preservation and waiver may sometimes create a 'jurisdictional bar,'" *supra* ¶ 35, presumably if the rule of preservation is created by a statute or rule of procedure that does not allow for any exceptions. *Supra* ¶ 32.

¶67 The majority further attempts to draw a boundary around this new category of jurisdiction by stating that many statutes, including statutes of limitation, are a legislative exercise of its authority to govern subject matter jurisdiction, whereas our rules of procedure (be they civil, criminal, appellate, or otherwise) generally limit our jurisdiction under this new category of jurisdictional bars. *Supra* ¶ 40. I agree to some extent with this new category of jurisdiction, but I disagree with the boundaries that the majority attempts to adopt as they ignore the nature of our constitutional jurisdiction.

¶68 Some other states have determined that "[j]urisdiction is composed of three elements: (1) personal jurisdiction; (2) subject matter jurisdiction; and (3) the court's power to render the particular judgment requested."[17] *Limehouse v. Hulsey*, 744 S.E.2d 566, 572 (S.C. 2013) (alteration in original) (citation omitted); *see also Indep. Sch. Dist. No. 1 of Okla. Cty. v. Scott*, 15 P.3d 1244, 1248 (Okla. Civ. App. 2000); 21 C.J.S. *Courts* § 11 (2017 update) ("Jurisdiction encompasses: jurisdiction of the subject matter, jurisdiction of the person, jurisdiction of the res or property, and, by the rule applicable in some courts, jurisdiction to render the particular judgment in the particular case." (footnotes omitted)). The majority appears to adopt this third prong, which is sometimes called "'particular-case' jurisdiction." 21 C.J.S. *Courts* § 14 (2017 update). This type of jurisdictional analysis deprives a court of the "authority to hear a particular case if a party fails to follow the statutory procedures for invoking the court's authority in that particular case." *Id*. However, the majority expands this type of jurisdictional bar from when a "party fails to follow the *statutory* procedures for invoking the

---

[17] Our constitution also specifically recognizes appellate jurisdiction.

court's authority," *id*. (emphasis added), to a party's failure to follow a rule of procedure promulgated by this court.

¶69    While I agree to some extent with recognition of this category of jurisdiction, I believe it must be utilized with caution and in light of our constitution. I would read the third prong of jurisdiction as only applying to constitutional and legislative limits on a court's power to render a particular judgment requested. Our constitution does not give this court power to expand or limit the jurisdiction of the courts generally.

¶70    Jurisdiction is generally defined as "[a] court's power to decide a case or issue a decree," and it typically "speak[s] from a position outside the court system [that] prescribe[s] the authority of the courts within the system." *Jurisdiction*, BLACK'S LAW DICTIONARY (10th ed. 2014); 21 C.J.S. *Courts* § 1 (2017 update) ("Courts are not self-conceived but exist by force of law under the authority of constitutional provisions or statutes, and not by the courts' rule-making power or by the parties' stipulation or conduct."). Thus, we have stated that the jurisdiction of our courts is "established by the Utah Constitution and by statute." *S. Utah Wilderness All. v. Bd. of State Lands & Forestry of Utah*, 830 P.2d 233, 234 (Utah 1992). While the majority attempts to grant this court the authority to limit our own jurisdiction and the jurisdiction of the other courts in this state, the language of the Utah Constitution does not support such an interpretation. Article VIII, section 3 governs the jurisdiction of this court, and article VIII, section 5 governs the jurisdiction of every other court in this state.

¶71    Article VIII, section 3 provides that this court "*shall have* appellate jurisdiction over all . . . matters to be exercised as provided by statute," and that we "*shall have* original jurisdiction to issue all extraordinary writs and to answer questions of state law certified by a court of the United States." UTAH CONST. art. VIII, § 3 (emphases added). There is not much wiggle room in this language. This constitutional provision defines the outer limits of our power, and its use of "shall" mandates that this court cannot expand or limit our own jurisdiction. Indeed, the legislature cannot even limit our appellate jurisdiction. It can only require that we exercise our appellate jurisdiction "as provided by statute." *Id*. It typically does

so by requiring certain categories of appeals to pass through the court of appeals prior to reaching this court.[18]

¶72    Similarly, the Utah Constitution defines the jurisdiction of our district courts. It provides that "[t]he district court *shall have original jurisdiction* in all matters except as limited by this constitution or by statute . . . ." UTAH CONST. art. VIII, § 5 (emphasis added). Contrary to the majority's holding, the "power [of the district court] to reach a certain question presented" is not, and cannot, be limited by a rule of procedure promulgated by this court. *Supra* ¶ 39. The constitution is clear; the district court "*shall* have original jurisdiction in all matters" unless the constitution itself, or a statute that complies with our constitution, limits that jurisdiction. UTAH CONST. art. VIII, § 5 (emphasis added).

¶73    The constitution clearly establishes and outlines the power of this and the district court and provides the only means whereby this or the district court's jurisdiction may be altered.[19] Nevertheless, the majority holds that we, through our rules of procedure, may "circumscribe our jurisdiction." *Supra* ¶ 40. It does so by trying to draw an untenable line between the legislature's "constitutional authority to regulate subject-matter jurisdiction" and its belief that this court can expand or limit particular case jurisdiction. *Supra* ¶ 37. This does not comport with the plain language of our constitution. It clearly states that district courts "shall have" jurisdiction unless the constitution or a statute provides otherwise. The constitution does not draw an arbitrary line between subject matter jurisdiction and particular case jurisdiction.

---

[18] As an example, the legislature has given the court of appeals appellate jurisdiction over certain categories of cases, such as all appeals from "criminal cases, except those involving a conviction or charge of a first degree felony or capital felony." *See* UTAH CODE § 78A-4-103(2)(d), (e). We can exercise our appellate jurisdiction over "a judgment of the Court of Appeals," or "judgments . . . of any court of record over which the Court of Appeals does not have original appellate jurisdiction." UTAH CODE § 78A-3-102(3)(a), (j).

[19] The constitution also clearly defines the jurisdiction of our statutory courts and provides the only means whereby their jurisdiction may be altered. "The jurisdiction of all other courts, both original and appellate, shall be provided by statute." UTAH CONST. art. VIII, § 5. When the constitution says that our statutory courts' jurisdiction "shall be provided by statute," it leaves no room for this court to expand or limit their jurisdiction by procedural rule.

¶74 Indeed, there is no real difference between these two classifications as "[p]articular case jurisdiction is a subset of subject matter jurisdiction . . . ." *Hisle v. Lexington-Fayette Urban Cty. Gov't*, 258 S.W.3d 422, 429 (Ky. Ct. App. 2008). Whether a court can hear the subject matter of a particular argument in a particular case because the argument is untimely is necessarily a subset of whether a court can hear the broader subject matter of the claim in general. In any event, the plain language of our constitution does not support a distinction between these two classifications of jurisdiction.

¶75 The majority's analysis concerning how we have the power to limit or expand our jurisdiction is not persuasive. First, it looks to the mandatory language in rule 12 of both our Rules of Civil Procedure and our Rules of Criminal Procedure to show that somehow, these rules must be jurisdictional. *Supra* ¶¶ 29–33. It supports this statement by citing two cases. *See supra* ¶ 33 n.5. But neither of those cases dealt with the Utah Constitution and there are plenty of cases that state the opposite. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998) ("[J]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." (second and third alterations in original) (citation omitted)); *Davoll v. Webb,* 194 F.3d 1116, 1128 n.3 (10th Cir. 1999) (stating that "the difference between a question of subject matter jurisdiction and one of failure to state a claim is a lesson that has been taught as often in decision as it has been ignored in argument and dicta," and "courts should carefully consider whether a dismissal is truly jurisdictional") (citations omitted) (internal quotation marks omitted)).

¶76 Second, the majority looks to our constitutional power to promulgate rules of procedure. *Supra* ¶¶ 35, 38. Thus, the majority reasons, because we have the constitutional power to promulgate procedural rules, and some procedural rules are allegedly jurisdictional, we must have the constitutional power to expand or limit our jurisdiction. We certainly have the power to promulgate procedural rules. But, as shown above, we do not have the constitutional power to alter the jurisdiction of any court in this state.

¶77 The majority's analysis misunderstands the role of our rules of procedure. Not all procedural or substantive bars, whether in a statute or a rule, deal with a court's authority to hear a case. Some statutes and rules speak "only to the rights and obligations of the litigants, not to the power of the court." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127 (2d Cir. 2011); *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of*

*Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009) ("Not all mandatory 'prescriptions, however emphatic, are . . . properly typed jurisdictional.'" (alteration in original) (citation omitted)). I see both the criminal and civil version of rule 12 differently from the majority. I see them, and every other procedural rule we promulgate, as imposing "rights and obligations" on the litigants. We are simply warning parties that if they do not comply with our procedural rules, they may be barred from raising a claim or argument.

¶78　I believe this interpretation of our procedural rules is mandated by the constitution. The constitution and statute are the only things that can actually define the limits of a court's power to hear a case or address a particular question. We cannot expand or limit our jurisdiction through rulemaking.

¶79　The rules themselves support this interpretation. Utah Rule of Civil Procedure 1 recognizes that our rules "govern the procedure in the courts of the state of Utah in all actions of a civil nature." These rules—such as the timing requirements for filing a motion under rule 12—are intended to assist us in achieving "the just, speedy, and inexpensive determination of every action." UTAH R. CIV. P. 1.[20] They are not intended to, nor can they, expand or limit our jurisdiction. Our rules of procedure impose rights and obligations on the parties and inform litigants what steps they must follow in order for us to address a question, i.e. to properly *invoke* our jurisdiction, with consequences for the litigants if they fail to comply with those rules. They do not abrogate or limit our power to hear a case or an issue. It would be somewhat counterintuitive to say that our rules limit our power to hear a particular issue when we can simply amend those rules tomorrow.[21]

---

[20] Utah Rule of Criminal Procedure 1 similarly provides that "[t]hese rules shall govern the procedure in all criminal cases in the courts of this state except juvenile court cases." UTAH R. CRIM. P. 1(b). They are not intended to expand or limit our jurisdiction, they are merely "intended and shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unnecessary expense and delay." *Id*.

[21] While the legislature can amend its statutes governing our jurisdiction, this is a different issue. As mentioned above, adjudicatory jurisdiction is typically defined by some external force, such as the constitution or statute. *See supra* ¶ 73. Our government is one of checks and balances. The constitution and legislature define the jurisdiction of the courts in this state. Similarly, the constitution,

(continued . . .)

¶80    Our Rules of Appellate Procedure explicitly acknowledge that we do not have the constitutional power to expand or limit our own jurisdiction. Utah Rule of Appellate Procedure 1(d) provides that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the Supreme Court or Court of Appeals as established by law." I acknowledge that we have classified the timing requirement for filing a notice of appeal in Utah Rule of Appellate Procedure 4(a) as "jurisdictional." *State v. Collins*, 2014 UT 61, ¶ 22, 342 P.3d 789 (citation omitted). However, I believe this should be viewed as a statement that the appellant has failed to *invoke* our jurisdiction and is procedurally barred, rather than that we have no jurisdiction. *See id.* (stating that the requirement to file within 30 days is a "procedural prerequisite to invoking appellate court jurisdiction").[22]

¶81    I reject the assertion that a procedural rule that was promulgated by this court can govern our jurisdiction. I also note

---

(continued . . .)
as interpreted by this court, limits the power of the legislature. After we have interpreted the constitutional limits of the legislature, they cannot simply pass another statute to expand or limit their power. Likewise, it would be very odd if we could define what power we have to hear a case and then change it the next day by amending our rules. Additionally, the majority's implication that we have power to expand or limit our jurisdiction outside of, and contrary to the plain language of, the constitution cannot be accurate. *Supra* ¶¶ 35–39 (stating that the constitution only regulates subject matter jurisdiction, not our authority to restrict other jurisdictional boundaries). The better view is that our rules govern the rights and obligations of the parties, not our own power.

[22] While I would limit such statements, I recognize that we have clearly stated that the failure to comply with Utah Rule of Appellate Procedure 4(a) deprives this court of jurisdiction. *Collins*, 2014 UT 61, ¶ 22 (stating that failure to timely file means "that an appellate court simply has no power to hear the case"). However, I believe this is "symptomatic of the widespread epidemic of fuzzy, shorthand, imprecise and variegated usage of the term 'jurisdiction' by courts, litigants and commentators . . . ." *N-Tron Corp. v. Rockwell Automation, Inc.*, CIV. A. No. 09-0733-WS-C, 2010 WL 653760, at *4 (S.D. Ala. Feb. 18, 2010). I would reject such statements as our constitution and the Rules of Appellate Procedure do not allow us to expand or limit the jurisdiction of any court.

that the majority's discussion of these procedural rules is dicta, as the only question at issue in this case is how the Plea Withdrawal Statute governs jurisdiction. I turn now to how, in my view, a statute governs a court's jurisdiction.

¶82 I believe that there are at least two categories of statutes that govern jurisdiction.[23] One type of statute governs subject matter jurisdiction, which is a court's power to hear a class of cases. *See Johnson v. Johnson*, 2010 UT 28, ¶ 10, 234 P.3d 1100 (stating that "most of our cases that have addressed subject matter jurisdiction have considered the authority of the court to adjudicate a class of cases, rather than the specifics of an individual case"). The other type governs our jurisdiction to render a particular judgment in a particular case. *See Limehouse*, 744 S.E.2d at 572. Any time a statute limits particular case jurisdiction, it does so as a subset of subject matter jurisdiction. Thus, there may be instances when we have the jurisdictional power to hear a class of cases, but we lack the jurisdictional power to render a particular judgment in a case.

¶83 I believe the Plea Withdrawal Statue is such a statute. We have the power to hear arguments that a guilty plea should be withdrawn, but the legislature has limited our power to hear such a claim if the motion is not made before sentencing. Obviously, not all statutes containing "mandatory 'prescriptions, however emphatic, are . . . properly typed jurisdictional.'" *Union Pac. R.R. Co.*, 558 U.S. at 81 (alteration in original) (citation omitted). However, I believe that the Plea Withdrawal statute is clearly jurisdictional. It not only speaks of the defendant's obligation to timely move to withdraw, it also speaks to this court's power by identifying the only route through which we may hear an untimely claim: a civil action under the PCRA. *See* UTAH CODE § 77-13-6(2)(c) ("*Any* challenge to a guilty plea not made" before sentencing "*shall* be pursued under" the PCRA. (emphases added)).

¶84 Having clarified how I understand our jurisdiction is defined and controlled, and why the Plea Withdrawal Statute is jurisdictional, I move to the majority's treatment of preservation.

*B. Preservation*

¶85 The majority holds that the Plea Withdrawal Statute's jurisdictional bar is created through a rule of preservation, thereby

---

[23] There are obviously other types of statutes that deal with jurisdiction. For instance, the Nonresident Jurisdiction Act addresses a court's jurisdiction over a person. *See, e.g.,* UTAH CODE §§ 78B-3-201 through -209.

insulating it from the protections of the constitutional right to appeal and the associated rights to paid counsel and effective assistance of counsel on direct appeal. In doing so, the majority creates a new category of preservation that is not subject to the common law exceptions to preservation. I do not agree that preservation creates a jurisdictional bar. Preservation and jurisdiction are two distinct doctrines, as recognized by our precedent. I will first address that precedent, then discuss why I believe it is correct in holding that preservation and jurisdiction are doctrinally distinct under the constitution. Finally, I discuss the damage the majority's holding will have on our common law of preservation and waiver and the way we interpret and apply statutes.

1. The Majority Overturns Precedent Without Conducting the Proper Analysis

¶86    Under a previous version of the Plea Withdrawal Statute, this court held that preservation created the procedural bar to post-sentencing motions to withdraw a guilty plea, but we later rejected that analysis when the statute was amended in 1989. "The legislature enacted the Plea Withdrawal Statute in 1980, with two significant substantive amendments in 1989 and 2003. The 1980 version of the statute did not include a time limitation for withdrawing a guilty plea . . . ." *Gailey v. State*, 2016 UT 35, ¶ 12, 379 P.3d 1278. It was not until 1989 that the legislature included a time limit for filing a motion to withdraw a guilty plea. *Id.* ¶ 13.

¶87    Under the 1980 version of the statute, we recognized that the law of preservation created a procedural bar to a defendant withdrawing a guilty plea. *State v. Reyes*, 2002 UT 13, ¶ 4, 40 P.3d 630 (stating that under the 1980 Plea Withdrawal Statute, "the filing of a motion to withdraw a guilty plea was an issue of preservation."). During the time that we relied on the law of preservation to create a procedural bar, we recognized that a defendant was still entitled to review on direct appeal if an exception to preservation applied. *See State v. Marvin*, 964 P.2d 313, 318 (Utah 1998) (recognizing that under the 1980 Plea Withdrawal Statute, the court "will, however, entertain [a motion to withdraw a guilty plea] for the first time on appeal if plain error or exceptional circumstances exist").

¶88    We later rejected preservation as the grounds for the procedural bar when the Plea Withdrawal Statue was amended in 1989 and a time limit for filing a motion to withdraw was added. In *Reyes* the defendant argued that, even though the Plea Withdrawal Statute's procedural bar is jurisdictional, the bar was a matter of preservation and thus was subject to the preservation exceptions such as plain error or exceptional circumstances. 2002 UT 13, ¶ 4. We

rejected this argument, stating that the procedural bar under the 1980 version of the statute was "an issue of preservation," but that once the legislature included a time limit to withdraw a guilty plea in 1989, the procedural bar was no longer an issue of preservation, but became "an issue of jurisdiction." *Id.* We went on to state that "[t]his court may choose to review an issue not properly preserved [under an exception to preservation]. It cannot, however, use [an exception to preservation] to reach an issue over which it has no jurisdiction." *Id.* (citation omitted).

¶89    This language clearly distinguished between jurisdiction and preservation. It treated preservation as an issue that is always subject to the common law exceptions to preservation. However, when a court lacks jurisdiction, preservation is not an issue.

¶90    Our courts have affirmed the holding in *Reyes* on many occasions. *State v. Rhinehart*, 2007 UT 61, ¶ 14, 167 P.3d 1046 ("We . . . are without jurisdiction to consider" the defendant's "claims of ineffective assistance of counsel raised in the context of challenges to [her] . . . guilty plea[] . . . ."); *State v. Lee*, 2011 UT App 356, ¶ 2, 264 P.3d 239 ("[T]he jurisdictional bar prohibits review of a guilty plea even when . . . 'styled as a claim of ineffective assistance of counsel.'" (citation omitted)); *State v. Wright*, 2002 UT App 180, *1 ("We lack jurisdiction to consider a . . . claim that counsel was ineffective . . . because [defendant] did not file a timely motion to withdraw the guilty plea."). The Plea Withdrawal Statute cuts off the jurisdiction of the district court to hear challenges to guilty pleas that are made for the first time post-sentencing, and we are barred from hearing such a challenge for the first time on direct appeal. This jurisdictional bar is not created by the law of preservation, as *Reyes* clearly recognized that preservation is always subject to the common law preservation exceptions. We most recently affirmed this precedent in *Gailey*, 2016 UT 35, ¶¶ 12–20.

¶91    The majority overrules *State v. Reyes* without conducting any analysis under *stare decisis*. "Stare decisis 'is a cornerstone of Anglo–American jurisprudence' because it 'is crucial to the predictability of the law and the fairness of adjudication.'" *Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553 (citation omitted). Under this doctrine, we presume that our precedent controls the case before us, and "[t]hose asking us to overturn prior precedent have a substantial burden of persuasion." *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994) *superseded on other grounds as recognized by State v. Goins*, 2017 UT 61, --- P.3d ---. We only overrule precedent when we determine that it is not the weightiest of precedent. We have recognized two "broad factors that distinguish between weighty

precedents and less weighty ones: (1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *Eldridge*, 2015 UT 21, ¶ 22.

¶92    Despite this great burden on overruling precedent, the majority opinion treats our precedent as expendable. It asserts that its analysis "is fully consistent with" *Reyes*, apparently in an attempt to avoid having to overrule *Reyes*'s holding. *Supra* ¶ 49. However, as noted above, *Reyes* clearly rejects the majority opinion's approach by treating preservation and jurisdiction as two separate and distinct doctrines with different implications. If the bar is due to preservation, it must be subject to the exceptions to preservation. *Reyes*, 2002 UT 13, ¶ 4. If the bar is jurisdictional, then it is not an "issue of preservation." *Id*. In *Reyes*, we rejected preservation as the grounds for the procedural bar and drew a line between jurisdiction and preservation.

¶93    The majority's strained reading of *Reyes* is untenable. If the majority wishes to make the Plea Withdrawal Statute's procedural bar both and issue of preservation and an issue of jurisdiction, it must deal with the fact that *Reyes* treated them as separate and distinct.

2. Jurisdiction is Governed by Statute, not Preservation

¶94    The majority argues that my distinction between preservation and jurisdiction is "a false dichotomy," because some rules and statutes "prescribe a rule of preservation [that] establish a waiver sanction that stands as a jurisdictional bar." *Supra* ¶¶ 26–27. Obviously, when a party fails to raise an issue, it is waived and is not preserved. But the majority puts the cart before the horse. Waiver and preservation do not create the jurisdictional bar. The statute creates the jurisdictional bar.

¶95    As described above, the jurisdiction of our courts "is established by the Utah Constitution and by statute." *S. Utah Wilderness All. v. Bd. of State Lands & Forestry of Utah*, 830 P.2d 233, 234 (Utah 1992). District courts have "original jurisdiction in all matters except as limited . . . by statute." UTAH CONST. art. VIII, § 5. This court has "appellate jurisdiction over all . . . matters to be exercised as provided by statute." *Id*. art. VIII, § 3. The jurisdiction of Utah courts is not established by whether a party preserves or waives an issue, it is established and managed by the constitution and statute.

¶96    The Plea Withdrawal Statute cuts off the jurisdiction of our district and appellate courts, preventing them from reaching the

substance of a challenge to a guilty plea if the challenge is not made prior to sentencing. *Supra* ¶ 83. Preservation is not what creates the jurisdictional bar. The statute creates the jurisdictional bar as recognized by the constitution. The Utah Constitution does not say that the district courts' and our jurisdiction is governed by preservation—it says it is governed by statute.[24]

¶97    If we lack jurisdiction to hear an appeal, then preservation never becomes an issue. Lack of jurisdiction automatically divests

---

[24] The majority is concerned with this statement. It argues that if the legislature has "the power to set filing deadlines . . . then [it] will have the power to promulgate even basic rules of procedure." *Supra* ¶ 58 n.12. That would be a concerning proposition, but it misrepresents the nature of my analysis.

Our constitution delineates the responsibilities of this court and the legislature. This court has the power to manage the procedure and process in all state courts exercising original and appellate jurisdiction. UTAH CONST. art. VIII, § 4 (stating that this court has the power to "adopt rules of procedure and evidence to be used in the courts of this state and shall by rule manage the appellate process"). On the other hand, the legislature has the power to "amend the Rules of Procedure and Evidence adopted by the Supreme Court," *id.*, limit the jurisdiction of our district courts by statute, *id.* art. VIII, § 5, create and define the jurisdiction of our statutory courts by statute, *id.*, and manage the exercise of our "appellate jurisdiction" "by statute," *id.* art. VIII, § 3.

This court's power to manage the process and procedure of our courts is different than the legislature's power to manage or define the jurisdiction of our courts. The majority misses this key distinction. When a statute defines the jurisdiction of the district or statutory courts, or when it manages the exercise of our appellate jurisdiction, the legislature is not promulgating "basic rules of procedure." *Supra* ¶ 58 n.12. It is managing the jurisdiction of our courts, which it has the clear constitutional authority to do. If, on the other hand, the legislature attempts to alter a rule of procedure that truly is "routine" and does not address the jurisdiction of the courts of this state, then it certainly would need to comply with the requirements for amending our rules in article VIII, section 4.

The majority asserts that there is "no need to consider this question" in this case. *Supra* ¶ 58 n.12. I disagree. I merely apply our precedent and the language of the constitution to the case at bar in explaining why the Plea Withdrawal Statute is a matter of jurisdiction, not a matter of preservation.

the court of the ability to reach a holding on the merits, including holding whether an issue has been properly preserved. This is because we always address jurisdictional issues first. *Rivers v. Exec. Dir. of the Utah Dep't of Envtl. Quality*, 2017 UT 64, ¶ 26, --- P.3d --- (stating that, "[b]efore we consider the arguments before us on appeal, we must evaluate whether" we have jurisdiction); *State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993) ("We begin with the threshold issue of the trial court's jurisdiction."). Preservation is only an issue in cases in which we have jurisdiction.

¶98    While a defendant's failure to comply with the statute certainly means that he has not preserved his motion to withdraw in the district court, the correlation between preservation and jurisdiction does not mean that the lack of preservation causes the jurisdictional bar. The jurisdictional bar is created by a defendant's failure to comply with the statute, not the failure to preserve an issue in the district court. *See, e.g.*, *Patterson v. Am. Fork City*, 2003 UT 7, ¶ 10, 67 P.3d 466 ("A plaintiff's failure to comply with the [Utah Governmental Immunity Act's] notice of claim provisions," and in particular, the timing in which a notice of claim is supposed to be submitted to a political subdivision, "deprives the trial court of subject matter jurisdiction."); *Winward v. State*, 2012 UT 85, ¶ 13, 293 P.3d 259 (noting that a party "acknowledge[d] that his petition is procedurally barred by the PCRA's one-year statute of limitations"). If we treat statutes with timing requirements the same as any other statute, this becomes clear. We do not incorporate unnecessary common law into every statute that includes a procedural or substantive requirement, we merely say that the failure of a party to comply with a statute results in a procedural or substantive bar. *Infra* ¶ 104.

¶99    For instance, there are many different types of statutes that govern the jurisdiction of our courts. Not all of them deal with timing. The Utah Constitution provides that the jurisdiction of the district court can be limited by statute. The legislature has limited, in certain circumstances, our district courts' jurisdiction to hear cases that deal with minors. *See* UTAH CODE § 78A-6-103 (providing that "the juvenile court has *exclusive* original jurisdiction" over certain types of cases involving minors (emphasis added)); *State v. Hodges*, 2002 UT 117, ¶¶ 8–10, 63 P.3d 66 (discussing the different jurisdictions that can be exercised by the juvenile court and the district court under a previous version of Utah Code section 78A-6-103). These statutes limit district courts' jurisdiction to hear the

subject matter of these issues in any case.[25] Conversely, under the Plea Withdrawal Statute, the district court typically has jurisdiction to hear the subject matter of a motion to withdraw a guilty plea. But if the defendant fails to move to withdraw prior to sentencing, the defendant fails to properly invoke that jurisdiction and the district or appellate court cannot hear the claim. *Supra* ¶ 80.

¶100   These two types of statutes create jurisdictional bars, but do so in different ways. One says a court can never hear a particular class of case (or subject matter jurisdiction), and another says a court can hear a particular case or issue only if a party meets certain prerequisites (or particular case jurisdiction, which is a subset of subject matter jurisdiction). *Supra* ¶ 82. When a statute deprives a court of subject matter jurisdiction, we would never say that the rules of preservation create the jurisdictional bar. The statute creates the jurisdictional bar. Arguing that the rules of preservation create the jurisdictional bar in the Plea Withdrawal Statute (which governs particular case jurisdiction) imposes a disconnected dichotomy between these two types of statutes that is not supported by our constitution. Regardless of how a statute governs our jurisdiction, it is the statute itself that does so, not the rules of preservation.

3. Statutes Prescribe Actions and Announce Penalties, Not Preservation

¶101   The majority's approach inserts uncertainty and confusion into our rules of preservation. It incorporates preservation terminology into every statute and rule that includes a timing requirement. *Supra* ¶¶ 28–29. It then attempts to distinguish between

---

[25] The legislature also limits the substantive issues that our juvenile and justice courts can hear. *See* UTAH CONST. art. VIII, § 5 (stating that "[t]he jurisdiction of all other courts, both original and appellate, shall be provided by statute"); s*ee also* UTAH CODE § 78A-6-103 (defining the substantive issues that a juvenile court has jurisdiction to hear); *id.* § 78A-7-106 (granting jurisdiction to the justice courts to hear only "class B and C misdemeanors" and other limited, substantive matters). Preservation has nothing to do with the legislature's definition of the jurisdiction of these courts. Their jurisdiction is defined by the statutes.

Additionally, while the constitution grants this court appellate jurisdiction over all cases that we do not have original jurisdiction over, the legislature has exercised its constitutional power to regulate the manner in which we exercise our appellate jurisdiction. UTAH CONST. art. VIII, § 3; *see supra* ¶ 71 n.3.

our common law of preservation and preservation mandated by a statute or rule by holding that the exceptions to preservation apply only to statutory preservation requirements in limited circumstances. *Supra* ¶ 32. I believe there is a more straightforward approach. Rather than trying to draw a statute's or a rule's requirements into our common law of preservation, these should be seen as separate and distinct doctrines to avoid confusing the common law of preservation.

¶102 Our common law of preservation imposes procedural requirements on litigants to raise issues at the necessary time to avoid waiving them and to "preserve" those issues for review on appeal. *State v. Johnson*, 2017 UT 70, ¶¶ 14–15, --- P.3d ---. The common law of preservation is self-imposed and is one of prudence that is intended to serve the interests of justice and procedural regularity. *Id.* ¶ 12. To further serve those interests of justice, the common law of preservation is subject to exceptions. While some preservation exceptions are well defined, this area of law is still in development. *Id.* ¶ 39 (stating that our exceptions to preservation may "continue to evolve as we confront future challenges"). That is how the common law operates. As each case comes before us, we have the opportunity to refine the common law as justice so requires.

¶103 Unlike the common law, we are bound by the language and intent of statutes and rules (even if the rules are self-imposed). Our sole task is to interpret and apply the statute or rule to the facts before us. Most statutes and rules govern the actions of individuals or entities. Some statutes deal with substantive obligations and rights, such as the prohibition on committing a crime or the requirement to pay taxes. Other statutes govern the process an individual or entity must follow to protect or enforce those rights and obligations, such as a requirement to file something within a particular time or the allocation of the burden of proof between parties in a lawsuit.

¶104 When an individual brings suit to enforce an alleged right or obligation, the individual or entity can be substantively barred from that suit if no actual right or obligation exists. *See* UTAH R. CIV. P. 12(b)(6) (stating that a party must actually state a legally enforceable claim that entitles them to some form of remedy or the case will be dismissed); *see also Harvey v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 2017 UT 75, ¶ 73, --- P.3d --- (holding that there is no currently enforceable civil cause of action for extortion). Also, an individual or entity can be procedurally barred if they fail to take the steps necessary to enforce those rights or obligations. *See, e.g.*, UTAH R. CIV. P. 12(b)(5) (allowing a court to dismiss a case if there

was "insufficien[t] . . . service of process"); *Adamson v. City of Provo*, 819 F. Supp. 934, 939 (D. Utah 1993) (discussing "procedural and substantive bars" raised by a party). The statute or rule provides the necessary procedural steps to enforce substantive rights; whether it is a timing requirement, a requirement to bring the suit in the correct court or administrative agency, or a requirement to serve a complaint on the opposing party. When a party fails to comply with the statute or rule, they are procedurally barred. This bar exists because of a failure to comply with the statute or rule.[26]

¶105   Inserting our common law of preservation and waiver into the Utah Code and into our procedural rules is unnecessary and only brings confusion into this area of the law. I would keep our common law of preservation separate from our analysis under a statute or rule, with one obvious exception. When a statute or rule refers to and incorporates our common law, it must be read in light of the common law. *Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 ("When the legislature 'borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.'" (citation omitted)). But when a statute simply says that a party must file a motion to withdraw a guilty plea before sentencing, I would not invoke our common law of preservation. If a party fails to comply with the statutory timing requirement, I would simply hold that they are barred because the statute says they are barred.

¶106 Only a small minority of statutes and rules deal with timing requirements. The majority would have us insert preservation analysis into these statutes and rules, thereby treating them differently from every other statute or rule. I would keep our statutory and rule analysis separate from our common law of preservation in order to prevent any confusion as to whether a statute is dealing with preservation, and whether the exceptions to preservation should apply to that statute. However, when a statute or rule clearly intends for our common law preservation exceptions to apply to a timing requirement, then it incorporates our common law and must be read in that context. *See, e.g.*, UTAH R. CRIM. P. 19(e) ("Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to

---

[26] Some of these statutory bars affect the jurisdiction of a court, and some statutory or rule based bars simply bar individuals from enforcing their rights because the statute or rule says they are barred.

avoid a manifest injustice."); *Johnson*, 2017 UT 70, ¶ 57 n.16 (holding that the "manifest injustice" exception in Utah Rule of Criminal Procedure 19 "incorporates the exceptions to the preservation requirement"). When it does not, we should simply apply the statute or rule as written without muddying the waters by using preservation terminology.

*C. The Plea Withdrawal Statute and the Right to Appeal*

¶107 Having laid out my framework for understanding our jurisdiction and the proper role of preservation, I now turn to whether the Plea Withdrawal Statute violates the constitutional right to appeal. The Utah Code of Criminal Procedure grants defendants the right to plead guilty with the associated right to engage in plea bargaining. *See* UTAH CODE § 77-13-1. Once a guilty plea has been entered, the guilty plea is binding on the guilt phase of litigation. If the defendant wishes to challenge his guilty plea, he must do so "by motion before sentence is announced." *Id*. § 77-13-6(2)(b).

¶108 After the defendant enters the guilty plea, the defendant must be sentenced "not less than two nor more than 45 days after the . . . plea, unless the court, with the concurrence of the defendant, otherwise orders." UTAH R. CRIM. P. 22(a). Thus, the defendant has time to consider his guilty plea before he is barred from moving to withdraw that plea. If the defendant fails to move to withdraw his guilty plea before sentencing, "[a]ny challenge" to his plea must be made under the PCRA. UTAH CODE § 77-13-6(2)(c).

¶109 The majority looks at how long the defendant has to file a motion to withdraw a guilty plea in determining whether his right to appeal has been unconstitutionally denied. It determines that so long as a statute does not create "an 'absurdly short' time" for raising an issue or the preservation requirement does not otherwise "eliminate[] any meaningful avenue for appellate review," it is constitutional and the defendant must comply with the requirement. *Supra* ¶ 23. Certainly, appellants must comply with procedural requirements to invoke the jurisdiction of the appellate court, such as filing a timely notice of appeal. Just as certainly, a timing requirement could violate the right to appeal if it is absurdly short.

¶110 However, this is not the only way a criminal defendant's right to appeal could be infringed. The right to appeal also guarantees defendants the right to have a claim heard, assuming they meet the procedural requirements to invoke our jurisdiction. The majority rejects this assertion, holding that the Plea Withdrawal Statute only narrows the issues that an appellate court can hear. However, just because it narrows the issues an appellate court can

hear does not make it "uncontroversial." *Supra* ¶ 18. For example, imagine that the legislature passed a statute saying the following:

> Any private party may sue a university for its negligence. If, however, the district court holds that the university is not negligent, the private party may not appeal such a holding. On the other hand, if the university is held to be negligent by the district court, the university may appeal the district court's ruling.

This would certainly violate the private party's right to appeal, along with a few other constitutional rights, even though it is only narrowing the issues that an appellate court can review.

¶111 The majority's holding insulates such a statute from the constitutional right to appeal in this case. Mr. Rettig has argued that his plea counsel was ineffective in advising him to plead guilty. A claim for ineffective assistance is sometimes considered an exception to preservation. Unfortunately for Mr. Rettig, the majority holds that the Plea Withdrawal Statute is insulated from preservation exceptions because it creates both a bar based on preservation and on jurisdiction. Apparently, the majority believes that this claim must be preserved in the district court by bringing such a claim before sentence is announced, otherwise it is unpreserved and we cannot hear it under any circumstances. This misunderstands a claim for ineffective assistance of counsel.

¶112 While ineffective assistance of counsel is "sometimes characterized as an exception to preservation," it is actually "a stand-alone constitutional claim attacking the performance of a criminal defendant's counsel." *Johnson*, 2017 UT 70, ¶ 22. Such a claim does not accrue until after the defendant's counsel provides ineffective assistance. *Id.* ¶ 23. Typically, when a defendant receives ineffective assistance of counsel, the defendant may either raise the new constitutional claim in a post-trial motion or on direct appeal because that is the first opportunity the defendant has to raise the claim. *Id.*; *State v. Templin*, 805 P.2d 182, 185 (Utah 1990) (stating that "the same principles [that] apply in addressing ineffective assistance claims in motions for new trials apply on direct appeal and in habeas corpus actions" (citation omitted)). Even though this new constitutional claim can typically be brought after the time has passed to preserve an issue (because it could not be brought earlier), the majority holds that it is barred by the statute and the statute does not unconstitutionally limit what issues can be brought on direct appeal. I disagree. We must recognize the nature of a claim for ineffective assistance of counsel and the fact that the plea withdrawal statute could infringe the constitutional right to appeal.

¶113 Say, for instance, that a defendant is charged with arson. Arson requires that a "person by means of fire or explosives unlawfully and intentionally damages" property. UTAH CODE § 76-6-102(1). Also assume that the defendant pleads guilty to arson upon the advice of his attorney. However, the facts entered in the guilty plea admit only that he intentionally started a garbage fire at his place of employment under the direction of his employer, but that the fire got out of control and burned the building down. His statement in support of the guilty plea asserts that he did not intend to damage the building.[27]

¶114 Under these facts, the defendant is not actually guilty of arson as the defendant did not intentionally damage his employer's building. However, his attorney advised him that he was guilty of arson and should enter a plea of guilty. Immediately after being sentenced, the defendant obtains new counsel who advises him that he is not actually guilty of arson. If the Plea Withdrawal Statute did not cut off the district court's jurisdiction to hear a post-sentencing motion, and our appellate jurisdiction to hear a challenge to the guilty plea, the defendant would be able to bring this new constitutional claim on direct appeal. However, the Plea Withdrawal Statute cuts off our jurisdiction, so we cannot review it on direct appeal. This is despite the fact that he could not have preserved this claim in the district court and we typically could review such a claim on direct appeal regardless of preservation.

¶115 The Plea Withdrawal Statute arguably gives the defendant the right to bring such a claim under the PCRA. However, a criminal defendant's constitutional right to direct appeal includes the associated constitutional rights to paid counsel and effective assistance of counsel on direct appeal. If the defendant was allowed to bring his ineffective assistance of counsel claim on direct appeal, he could get his appellate counsel's fees paid for by the State. Also, if his appellate counsel made a case-altering mistake, such as by failing to file a notice of appeal within the required time, he would have a new claim that his appellate counsel was ineffective.

¶116 The majority's approach eviscerates these rights. Under this approach, if the criminal defendant wants to bring his ineffective assistance of counsel claim—one that he could not have preserved in the district court—he must bring such a claim in a PCRA proceeding

---

[27] These facts are taken from *State v. Breckenridge*, 688 P.2d 440 (Utah 1983), with some alterations to show their applicability to the Plea Withdrawal Statute.

where he is not guaranteed the right to State paid counsel or the right to effective assistance of counsel. This is the only route for the defendant to bring this claim.

¶117   The majority insulates the Plea Withdrawal Statute from the constitutional right to appeal. However, "[i]t is a proposition too plain to be contested, that the constitution controls *any* legislative act repugnant to it . . . ." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added). In this case, Mr. Rettig argued that he was unconstitutionally denied the right to appeal because he could be denied the constitutional right to effective assistance of paid counsel in a PCRA proceeding. Mr. Rettig's right to appeal may very well be abrogated. Despite this possibility, I would follow *Gailey* and hold that this issue is not ripe for determination because he has not yet been denied paid counsel nor has he suffered from ineffective assistance of counsel in a PCRA proceeding. 2016 UT 35, ¶ 30.

## II. THE CONSTITUTIONALITY OF SUBSECTION (2)(C) UNDER ARTICLE VIII, SECTION 4

¶118 As mentioned above, Mr. Rettig brought two constitutional challenges to the Plea Withdrawal Statute's jurisdictional bar. His second argument is that subsection (2)(c) of the Plea Withdrawal Statute is purely procedural and is therefore unconstitutional under article VIII, section 4 of the Utah Constitution.

¶119   Under article VIII, section 4, this court has the authority to "adopt rules of procedure and evidence to be used in the courts of the state." UTAH CONST. art. VIII, § 4. On the other hand, the legislature has the authority to amend those rules "upon a vote of two-thirds of all members of both houses of the Legislature." *Id.*; *see also Injured Workers Ass'n v. State*, 2016 UT 21, ¶¶ 23–26, 374 P.3d 14 (In order to "maintain[] an independent judiciary," this court has the power to promulgate rules of procedure, but "the constitution permits legislative oversight of" those rules. (citation omitted)). The core question under this article is whether subsection (2)(c) "is a rule of procedure or creates a substantive right." *State v. Drej*, 2010 UT 35, ¶ 26, 233 P.3d 476.

¶120   In *State v. Drej*, we classified three categories of statutes under article VIII, section 4: (1) "purely procedural," (2) substantive, and (3) procedural provisions that are "so intertwined with a substantive right that the court must view it as substantive." *Id.* ¶¶ 25–31. When the legislature codifies statutes that fall under the latter two, they do not violate article VIII, section 4. But the legislature does not have the constitutional power to "adopt rules of procedure." *Brown v. Cox*, 2017 UT 3, ¶ 17, 387 P.3d 1040. Its power is

limited to "amend[ing] the . . . Supreme Court [rules] upon a vote of two-thirds of all members of both houses of the Legislature." UTAH CONST. art. VIII, § 4. As we clarified in *Brown v. Cox*, when the legislature intends to exercise its power of oversight under article VIII, section 4, the legislative action must "contain a reference to the rule to be amended and a clear expression of the Legislature's intent to modify our rules." 2017 UT 3, ¶ 20. Thus, when a statute is purely procedural and does not comply with the requirements to amend one of this court's rules, the statute violates Utah's constitutional separation of powers. *See* UTAH CONST. art. V, § 1 ("[N]o person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.").

¶121   The tricky issue is determining whether a statute is purely procedural. *See Ohlhoff v. Ohlhoff*, 586 A.2d 839, 844 (N.J. Super. Ct. App. Div. 1991) ("[T]he line between procedural and substantive law is blurry."); *State v. Coats*, 797 P.2d 693, 696 (Ariz. Ct. App. 1990) (noting that "a rule may be procedural in one context and substantive in another"); Kent R. Hart, Note, *Court Rulemaking in Utah Following the 1985 Revision of the Utah Constitution*, 1992 UTAH L. REV. 153, 154 (1992) (stating that "both legislative enactments and court rules contain elements of substance and procedure"). Many courts in states with a constitutional provision that mirrors ours are "extremely hesitant to characterize a subject as purely procedural and consequently within the exclusive authority of the Supreme Court." *Ohlhoff*, 586 A.2d at 844 (citing *Busik v. Levine*, 307 A.2d 571, 583 (N.J. 1973)).[28]   These courts avoid over-stepping their

_____

[28] *See also Borer v. Lewis*, 91 P.3d 375, 380 (Colo. 2004) (despite sole authority of court to promulgate rules of procedure, "we strive to avoid any unnecessary '[c]onfrontation[s]' of constitutional authority,' and instead seek to reconcile the language . . . of the legislative enactment with our own . . . rules of procedure" (first and second alterations in original) (citation omitted)); *Daou v. Harris*, 678 P.2d 934, 939 (Ariz. 1984) (holding that "all legislative enactments relating to procedure shall be deemed rules of court" when they do not conflict with the rules promulgated by the supreme court); *City of Fargo v. Ruether*, 490 N.W.2d 481, 483 (N.D. 1992) (holding that, despite the court's "final authority over procedural rules," the court "will recognize 'statutory arrangements which seem reasonable and workable' and which supplement the rules we have promulgated" (citations omitted)); *State v. Radford*, No. 2005-CA-58, 2006 WL

(continued . . .)

constitutional power by crossing into the legislature's lane. We are treading on thin constitutional ice when we declare a statute purely procedural and strike it down as unconstitutional, because most statutes contain substantive and procedural elements.

¶122   These same concerns are what led us in *Drej* to defer to the legislature when a statute's substance is intertwined with its procedural components. When those procedural components do not directly conflict with our rules and they are inextricably connected to the substantive provisions in the statute, we will not strike down the procedural components of the statute under article VIII, section 4. *See Drej*, 2010 UT 35, ¶ 31.

¶123   Substantive statutes "create[], define[] and regulate[] the rights and duties of the parties . . . which may give rise to a cause for action," *Id.* ¶ 26 (fourth alteration in original) (citation omitted), and they cut off substantive rights as well, *Brown & Root Indus. Serv. v. Indus. Comm'n*, 947 P.2d 671, 676 (Utah 1997) (holding that statutory amendment that cut off a party's rights "defines and regulates substantive rights"). Conversely, a statute is procedural when it "prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective" and provides the "procedure for enforcing substantive rights." *Drej*, 2010 UT 35, ¶¶ 26–27 (citations omitted). "Procedural laws are 'concerned solely with the judicial processes.'" *Id.* ¶ 27 (citation omitted).

¶124   The majority holds that "[s]ubsection (2)(c) is a classic matter of substance in that it establishes a new remedy or cause of action." *Supra* ¶ 57. I do not see how subsection (2)(c) does anything but point defendants to a pre-existing remedy or cause of action and cut off our jurisdiction to hear an untimely challenge. Subsection (2)(c) provides that "[a]ny challenge to a guilty plea not made" before sentencing "shall be pursued under [the PCRA]." UTAH CODE § 77-13-6(2)(c). Nothing in subsection (2)(c) creates or expands a defendant's rights under the PCRA. The PCRA itself creates the defendant's cause of action to challenge a guilty plea in a separate proceeding. If a defendant who fails to move to withdraw a guilty plea before sentencing seeks to challenge that plea under the PCRA, he must comply with all of the substantive and procedural

---

(continued . . .)
827380, at *4 (Ohio Ct. App. Mar. 31, 2006) (holding that when rules of evidence are "silent concerning" a particular issue, the legislature does not violate separation of powers in enacting evidentiary rules in a statute (citation omitted))

requirements under that statute. Subsection (2)(c) does not grant defendants any rights that do not already exists. It merely points defendants to a statute that does create rights, and then cuts off their ability to challenge their guilty plea in the criminal case by creating a jurisdictional bar.

¶125   Subsection (2)(c) contains both procedural and substantive components. While it is procedural in that it manages the judicial process by directing defendants to the PCRA, it is also substantive in cutting off the ability of a defendant to challenge a guilty plea and in cutting off the jurisdiction of the criminal court. *See supra* ¶ 83; *State v. Gailey*, 2016 UT 35, ¶ 19, 379 P.3d 1278 (Plea Withdrawal Statute cuts off jurisdiction of criminal court and appellate review). Regardless of whether subsection (2)(c) is more procedural or more substantive, I would hold that it is inextricably intertwined with the substantive right to withdraw a guilty plea.

¶126   Title 77, chapter 13 of the Utah Code grants criminal defendants several substantive rights. It grants them the right to enter a plea of guilty. UTAH CODE § 77-13-1. It also grants them the right to withdraw the guilty plea. *Id.* § 77-13-6(1). However, the legislature appears to have been concerned with granting an unqualified right to withdraw a plea of guilty. So, it included certain restrictions on that right. First, a defendant can only withdraw a guilty plea "upon leave of the court and a showing that it was not knowingly and voluntarily made." *Id.* § 77-13-6(2)(a). Second, a defendant must "request to withdraw a plea of guilty . . . before sentence is announced." *Id.* § 77-13-6(2)(b). Finally, if the motion to withdraw the guilty plea is not made before sentencing, "[a]ny challenge to [the] guilty plea" must be made in a separate PCRA proceeding. *Id.* § 77-13-6(2)(c).

¶127   These restrictions are presumably intended to prevent a defendant from gaming the system, or experiencing buyer's remorse, by previewing his sentence and then deciding to withdraw his plea if he does not like the sentence imposed. Entering a guilty plea is a serious matter that should be thoughtfully considered by a defendant. Once the plea is entered, the defendant cannot simply decide to withdraw it the next day. The defendant must have unknowingly or involuntarily entered the plea before he can withdraw it. These provisions imply that the legislature had one major concern when it granted defendants the rights to enter and withdraw a guilty plea: finality. While the legislature built in a release by allowing defendants to withdraw their guilty plea when they were legitimately uninformed or coerced, the right to withdraw is intended to be a narrow right.

¶128   Pulling subsection (2)(c) out of the web of rights and restrictions would cause the rest of the Plea Withdrawal Statute's structure to crumble. *See Drej*, 2010 UT 35, ¶ 31 (holding that a statutory assignment of the burden of proof was inextricably intertwined with a substantive right because "the procedures attached to the substantive right cannot be stripped away without leaving the right or duty created meaningless"). It would strip the right to withdraw a guilty plea of some of its restrictions and would greatly damage the statutory scheme. Removing this restriction on the right to withdraw a guilty plea could even pressure the legislature to remove that statutory right if they feel they are unable to place limitations on it. Because subsection (2)(c) is so intertwined with the substantive rights to enter and withdraw a guilty plea, I would deem it as substantive and hold that it is constitutional under article VIII, section 4.

¶129   The majority is concerned that my analysis weighs in favor of the constitutionality of subsection (2)(b). I do not address the constitutionality of that subsection, nor do I apologize for my analysis concerning subsection (2)(c). Our role as judges is to apply the facts and arguments presented to the law. That is all I have done here.

¶130   I am equally concerned with the majority's statement that "[s]ubsection (2)(b) . . . is quintessentially procedural," essentially ruling on subsection (2)(b)'s constitutionality even though it says it is not reaching that issue. *Supra* ¶¶ 58, 60. It then goes on to say that "[y]ou can't get much more procedural than a filing deadline." *Supra* ¶ 58. This weighs heavily in favor of all filing deadlines being unconstitutional under article VIII, section 4. Certainly, a statute of limitations is a filing deadline in a district court. We do not typically take issue with a run-of-the-mill statute of limitations.

¶131   The majority tries to shore up its analysis by stating that a statute of limitations is a "kind of filing deadline [that] has long been understood to fall within the domain of the legislature." *Supra* ¶ 58 n.13. This is a distinction without a difference. Prior to 1985, when our constitution was amended to give this court its rule making authority, the legislature had ultimate authority over procedural rulemaking, including timing requirements. Hart, *supra* ¶ 121, at 155–56 ("[A]lthough the supreme court possessed some power over procedural rulemaking . . . during this period, the legislature retained ultimate control over establishing procedural rules for Utah courts."). Historically, every kind of filing deadline was "understood to fall within the domain of the legislature." *Supra* ¶ 58 n.13.

DURHAM, J., concurring in the result

### III. CONCLUSION

¶132 The majority holds that Mr. Rettig has failed in his constitutional challenges to the Plea Withdrawal Statute's jurisdictional bar. I concur in the outcome in this opinion, but I have grave concerns about the route the majority takes to get there. It has altered our jurisdictional analysis, the way we view our common law of preservation, and the way we interpret every statute and procedural rule with a time restriction. It also classifies subsection (2)(c) of the Plea Withdrawal Statute as creating a substantive cause of action when it merely points defendants to the PCRA (that actually creates the cause of action). The majority's opinion could have many unforeseen consequences in future cases.

————————